## *In re* S. J. Henderson, Attorney, etc.

### (*Nashville.*   February 13, 1890.)

1. Attorney at Law.   *Disbarred upon Court's motion.*

   The Court will, upon its own motion, disbar an attorney for unprofessional conduct appearing from face of record of case in which he is acting as attorney.   "Too much is staked upon the honesty and good conduct of lawyers for Courts to wink at flagrant misconduct. They are trusted by the community with the care of their lives, liberty, and property, with no other security than personal honor and integrity. It behooves the Courts and the profession to see that their brotherhood keep clean records."

2. Same.   *Record disclosing conduct for which an attorney is disbarred.*

   The facts recited in the opinion were deemed by the Court·satisfactory evidence of a "studied and matured purpose" on the part of the attorney to mislead or deceive the lower Court and this Court by garbling the decree introduced in evidence; and therefore the attorney's name was stricken from the rolls for unprofessional conduct.

---

FROM  DAVIDSON.

---

Motion   to   disbar   attorney   for   unprofessional conduct.

J. L. Kennedy and J. A. Cartwright appeared through courtesy for Mr. Henderson.

TURNEY, Ch. J.   On a day of the present term this Court, of its own motion, made a rule on Mr. Henderson to show cause why he should not be stricken from the roll of attorneys.   That order was predicated upon the following facts :

In the case of *Swann* v. *Spurr, Trustee, et al.*, tried and disposed of at ' the present term, it appears that said Henderson, as solicitor, had, in a suit in the Chancery Court, obtained a decree to sell property, the proceeds of that sale being the subject-matter of litigation in the cause we have named.

In the former suit a decree of this Court was referred to, and a copy proposed to be filed on or before the hearing.   The copy filed is as follows :

" JAMES F. STOKES, Administrator of
      ORANGE SWANN,

        *v.*

" R. B. CASTLEMAN *et al.*

" This cause was this day heard upon the report of the Clerk and receiver, which is in the words and figures following, to wit :

" ' *To the Honorable Supreme Court sitting at Nashville:*

" ' I would respectfully report that as receiver in this cause, under the directions and instructions from complainants' counsel to W. J. Freeman, then my chief deputy, not to collect any rent from Defendant McFarland or force him to do any thing in the matter, that I have taken no steps in the matter of said receivership.   Having tendered to

this Court my resignation as Clerk of this Court, I would also respectfully tender my resignation as receiver in this cause, and submit this as my final report.          NATHANIEL BAXTER, JR., *Clerk.*

"'February 5, 1885.'

" Which said report, being seen and understood by the Court, is in all things confirmed, and the Court is pleased to accept the resignation of said receiver."

The Clerk certifies this to be a true and perfect copy of extracts, etc.

A reference to the report as embodied in the decree extracted from shows that the report continued, after the words "I have taken no steps in the matter of said receivership," as follows: "except to obtain from said McFarland, on November 8, 1884, a lien on certain property conveyed to G. B. Elliott by said McFarland to secure the payment of any rents that may be found due from said McFarland on the property in controversy in this cause," and exhibiting said lien as follows:

" Whereas, certain property was conveyed to me by G. B. Elliott by a deed on its face absolute, reference being here made to said deed, which is duly registered in Book 68, page 425, a written defeasance being given by said Elliott to the effect that said property was held as security to indemnify M. B. Howell for any amount that might be charged against him for rents; now the said G.

B. Elliott is hereby further directed to hold said property as security for the rents due by me to N. Baxter, Jr., Clerk of Supreme Court, for rents accruing since the case of *Swann* v. *Castleman* was appealed to the Supreme Court, and said Baxter directed to collect rents from me.

"W. R. McFarland."

This was accepted in these words:

"I accept the foregoing as part of the defeasance to said deed.                                   G. B. Elliott."

"Witness: M. B. Howell."

and marked "filed November 8, 1884."

The copy procured by Henderson was filed in the case of *Spurr, Trustee,* v. *McFarland et al.* The purpose of that bill was to sell the property on which the lien to Baxter had been given to satisfy the decree in *Swann* v. *Castleman et al.,* which had been transferred to complainants. It charged that there were obstacles and embarrassments in the way of the sale of the property which should be removed.

After specifying certain of these obstructions and embarrassments, it proceeds: "And when said cause of *Swann* v. *Castleman et al.* had been removed to the Supreme Court, the defendant, N. Baxter, Jr., former Clerk of said Court, was appointed receiver in said cause, and after the cause had been pending in the Supreme Court about four years, said Defendant Baxter, as such receiver, in his final and

only report in the cause, stated to the Court that complainant's counsel in said cause had expressly instructed and directed. him, the said Baxter, receiver, not to collect any rents from said Defendant McFarland, or force him to do any thing, and not to take any steps in the matter. The said report of said Baxter, as such receiver, was confirmed by the Supreme Court on February 27, 1885, and he was then discharged from said receivership; and although he was, as above shown, expressly directed not to collect any rents from said McFarland, and not to take any steps as such receiver, yet, in November, 1884, seeing that there was an attempt on the part of complainants' counsel in said cause to hold Morton B. Howell, the former receiver, while said cause was pending in the Court, personally liable for the rents of the property in question in said cause, said defendant, N. Baxter, became apprehensive that an attempt would also be made (said express instructions of complainant's counsel to the contrary· notwithstanding) to hold him, the said Baxter, as such receiver, personally liable for such rents. He states he also obtained a defeasance or lien to the effect that said Defendant Elliott should hold said Cherry Street lots, conveyed to him as before stated by Defendant McFarland, to indemnify the receiver against personal liability on account of the non-collection of any such rents. Such having been the motive and intention of said Defendant Baxter in obtaining such lien or defeasance, if any, in fact,

were given, and he having been discharged by de-
cree of the Supreme ·Court from such receivership,
without in any way being held for rents in said
cause, complainants aver that they have the right
to have said deed to said Defendant Elliott set
aside, and such defeasance or lien, if any, removed ·
as an obstacle in the way of the sale of said lots;
and complainants aver that they have the right to
recover the entire proceeds of such sale in part
satisfaction of the judgment of the Supreme Court.
Certified copy of said report and judgment will be
filed, if necessary, as evidence on behalf of com-
plainants, on or before the hearing of this cause."

This bill is signed:     " S. J. HENDERSON,

*"Solicitor for Complainants."*

We have thus fully shown the parts of record
making the predicate of the rule to show cause, etc.
The answer is "that he is not conscious that he
has deceived the Chancellor; that it has not been
his intention to practice a deceit; that he had
learned that McFarland had given the indemnity
on the land to secure the Clerk of the Supreme
Court against personal liability for failure to collect
rents, etc., and from information received from
Howell and Baxter he was fully convinced the
security was wholly to secure Baxter against per-
sonal liability; that Baxter's answer is, 'that
the lien was taken for his own personal benefit,
and not at the instance nor for the benefit of any
of the parties to said cause of *Swann* v. *Castle-
man et al.*'"

He believed the extract embraced every thing material or in any way necessary to be brought to the attention of the Chancellor for a proper understanding of that branch of the case in order to secure a full, fair, just, and adequate decree from the Chancellor.

He believes if the whole of said decree had been before the Chancellor, his decree would have been the same.

His theory of the case was, that when Stokes, administrator, etc., assigned the judgment it gave to Spurr, trustee, etc., the liens of the judgment and execution on the realty of McFarland, which liens would have been anterior to any lien in favor of Baxter, but was willing to remove any question with Baxter by showing that Baxter had been excused from collecting rents, and had been discharged without any effort to hold him liable, and therefore could have no lien according to the intention of the parties making the defeasance as he understood that intention.

He submits that the facts and pleadings presented to the Chancellor were not misleading in the view he (Henderson) took of the real merits of the controversy.

Are these answers sufficient to discharge the rule? We think not. As we have seen, the bill in support of which the extract from the decree of this Court was used in evidence, sought to remove incumbrances. Instead of stating the lien to Baxter in terms, it gave it the construction that

it was solely for Baxter's personal security, when a correct and perfect copy would have shown that it was for the rents due to Baxter, Clerk of the Supreme Court, accruing since the case had been appealed. It certainly impressed the mind of Mr. Henderson just as we did heretofore and now interpret the instrument, although Baxter's purpose was to indemnify himself. He saw that the whole report would show an incumbrance in favor of parties not before the Court by his bill, and that he could avoid that discovery by leaving off the material qualification of the receiver's report that he had taken no steps in the matter of the receivership. To do this, he cut in two a sentence to make a qualified report an unconditional one. To intensify the evidence of his purpose, he passes over the lien which is embodied in the report and immediately follows and explains the qualification of the report, to the tender of the receiver's resignation.

The mutilated extract supports the theory and allegations of the bill. The decree in its integrity overthrows them. As intimated by Judge Baxter, the question was one for the Courts. No Court can construe any decree by a detached part of it upon a given subject-matter. Mr. Henderson must have contemplated and passed upon the effect of the whole and the effect of a part, and concluded to pursue the policy of mutilation. He carefully carried out his plan by reading the parts he wanted to a young man in the office, who copied as Henderson read. There is no solution of his

conduct except upon the theory of a studied and matured purpose to mislead. That the Chancellor may have found other grounds upon which to base his decree, and that he was not therefore misled, does not relieve of the intent to deceive. The fact that lawyers might differ is a stronger reason for submitting the construction to the Courts.

It is impossible for us to believe that these important omissions were innocently made with no purpose to deceive or mislead, especially when 'we remember no party was before the Court who had any interest in keeping the lien alive, but, on the contrary, with one indifferent and the others interested in vacating it.

The facts make the purpose too plain and palpable to allow us to entertain a doubt of its bad faith.

The conclusion is painful but imperative. 'Too much is staked upon the honesty and good conduct of lawyers for Courts to wink at flagrant misconduct. They are trusted by the community with the care of their lives, liberty, and property, with no other security than personal honor and integrity.

It behooves the Courts and the profession to see that their brotherhood keep clean records.

Mr. S. J. Henderson has been guilty of such acts of immorality, impropriety, and unprofessional conduct as are inconsistent with the character and faithful discharge of the duties of the profession. The rule is made absolute. His name is stricken

from the rolls, and he will not be permitted to practice the profession in any Court of Record in this State.

---

TURNEY, C. J., disposed of petitions subsequently presented in behalf of Mr. Henderson with the following remarks:

In the matter of S. J. Henderson two petitions have been presented to the Court, one from leading business men, the other from members of the bar. Both petitions are couched in most respectful language, and both do credit to the sympathy of the petitioners. The Court thoroughly feels a sympathy for the family and friends of this unfortunate man. Neither of the petitions, however, call the attention of the Court to any merits of the case which have been overlooked, or to any point which should be reviewed. They are directed to the mercy and sympathy of the Court. The record was twice carefully examined by the Court, and the Court was the prime mover in unanimously agreeing that S. J. Henderson should show cause why he should not be disbarred. He was given time within which to make his defense, and the matter was decided. The Court must try these questions by the record. The record has developed a most glaring violation of professional duty, done purposely to win his case. However painful the duty may be, we are bound by the

*In re* S. J. Henderson, Attorney, etc.

record. We have a very high regard for the petitioners, but it is easy to see, if sympathy and mercy should be allowed to influence our decisions, how criminals would escape, who have every influence, home and otherwise, to make them adhere to duty. We feel that we must affirm our former decision.