STATE BOARD OF LAW EXAMINERS *v.* SHIMER.*

(*Nashville.    December Term, 1914.)

1. **ATTORNEY AND CLIENT.** Disbarment. Limitations. Knowledge.

Acts 1903, ch. 247, sec. 5, providing that a license to practice law granted by the supreme court on certificate of the State board of law examiners, if procured by fraud, may be revoked at any time within two years, did not intend that the limitation should begin to run until knowledge of the fraud had been brought home to the board petitioning for a revocation of license. (*Post, p.* 349.)

Acts cited and construed:   Acts 1903, ch. 247.

2. **ATTORNEY AND CLIENT.** Disbarment. Conviction of crime. Statute.

Shannon's Code, secs. 5781-5783, provide that charges preferred against an attorney shall be in writing, and a copy furnished the attorney, authorize the courts to strike from their rolls any attorney guilty of misdemeanor, inconsistent with his professional duties, and declare that one so stricken may not practice in any court of record.   Acts 1903, ch. 247, establishes a State board of law examiners, and sections 3-5 thereof provide for certification by the board, and a rule, authorized by section 6 thereof, provides that an applicant, on presentation of his duly authenticated license from another State, may be admitted without examination, if the board is satisfied that he is worthy.   Respondent presented a license to practice in Maryland, but did not inform the board that he had there been convicted of obtaining money under false pretenses and served a jail sentence, and claimed that when he applied he had no knowledge of a proceeding disbarring him from practice in

---

*The question of the conviction or commission of crime or misconduct by an attorney in another state as ground for disbarment is treated in a note in 19 L. R. A. (N. S.), 892.   And upon the disbarment of an attorney in one state or concealment of that fact, as ground for disbarment in another state, see note in 24 L. R. A. (N. S.), 531.

State Board v. Shimer.

Baltimore city. There was also evidence of complaints against his professional conduct in the State in his dealings with poor and ignorant clients. *Held*, that respondent had fraudulently withheld information which he was bound to disclose to the board, and that his license would be canceled and his name stricken from the rolls. (*Post, pp.* 249-353.)

Acts cited and construed: Acts 1815, ch. 97; Acts 1817, ch. 51, sec. 1; Acts 1821, ch. 66, sec. 3.

Code cited and construed: Secs. 5781, 5783 (S.).

Cases cited and distinguished: In re Henderson, 88 Tenn., 531; Smith v. State, 9 Tenn., 228.

Cases cited and approved: State v. Fields, 8 Tenn., 137; Smith v. State, 9 Tenn., 228; Lawyer's Tax Cases, 55 Tenn., 565; Davis v. State, 92 Tenn., 634; Brooks v. Fleming, 65 Tenn., 331; Hunt v. McClanahan, 48 Tenn., 503; Ingersoll v. Coal Co., 117 Tenn., 263; In re Cameron, 126 Tenn., 614.

## FROM DAVIDSON.

Ex parte proceedings instituted by the State Board of Law Examiners of Tennessee, in Supreme Court.

JOHN B. KENNEDY, for respondent.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The State board of law examiners of Tennessee exists under chapter 247 of the Acts of 1903. See page 575 of the published acts of that year. The purpose of this act was to establish a state board of examiners to regulate the admission of persons to the practice of law, etc. The board consists of three members, who shall be appointed from time to time by the supreme

court. Sections 3, 4, and 5 of the act relate to the examination of persons applying for license to practice law in this State; the purpose of these examinations being to enable the board to certify to the supreme court the names of all applicants who shall have passed the required examinations, and in other respects complied with the rules regulating admission to the bar. The board is required to determine that the applicant has complied with the rules before allowing his examination. The statute provides that if, upon such certificate, this court shall find that the person is of good moral character and of full age, and otherwise qualified, it shall enter an order licensing him and admitting him to practice in all the courts of the State. Section 5 of the act also provides that, if the license be procured by fraud, it may be revoked at any time within two years.

H. Carhart Shimer was granted a license upon the certificate of the board to this court under the terms of the statute on the 28th day of October, 1910, and at the December term, 1913, of this court, the board presented a petition praying for a rule upon Mr. Shimer to show cause why his license should not be canceled and revoked, and for a decree canceling and revoking his license, for reasons set out in the petition.

It appears from the proof that the certificate on which the license was issued was based upon the application by Mr. Shimer, accompanying which he presented to the board certain documents relative to his life and character as a practicing lawyer in the city of

Baltimore, State of Maryland, where he had resided prior to the time when he came to this State and settled in Nashville for the purpose of engaging in the practice of law.

There is, within the purview of the act of 1903, the admission of persons to practice law in this State other than those who have passed the examination above referred to. Section 6 of the act provides:

"The supreme court may make such provisions, rules and regulations as it may deem proper for the admission of persons who have been licensed to practice law in other States or countries."

As required by the third and sixth sections of the act, this court adopted certain rules on April 28, 1903, which were amended March 18, 1911, and rule No. 6 relates to the admission of persons referred to in section 6 of the act. The rule is as follows:

"Every applicant for admission to the bar upon a license or other voucher showing his admission as attorney at law in some other State or foreign country must present to the board such license duly certified, or a copy of the record of the court showing his admission to the bar, duly proved as required by law for the authentication of the records of courts of sister States, when offered in evidence in a court of this State. Such license or voucher must confer the right to practice in the highest courts of such State or foreign country. Such applicant shall be admitted upon such license or voucher without examination by the board, if it appears to the court by a certificate of said

board that, in the State or country in which the license was issued, the requirements for admission to the bar were equal to those prescribed in this State, or if it should appear that the applicant has engaged in the active practice of law for a period of five years in courts of record under such license, and provided further that the board is otherwise fully satisfied that the applicant is worthy. The board shall certify to this court persons entitled to admission by virtue of having been admitted to the bar in such other State or foreign country. Provided further that nonresident attorneys associated with attorneys in this State in any case here pending, who do not desire to practice law regularly in this State, will be allowed to appear and argue cases in which they may be employed as a matter of comity, without being required to procure license as above provided, when introduced by a reputable lawyer of the bar where the case desired to be argued is pending.''

The petition of the board avers in substance that the license held by respondent was granted to him upon the certificate of the board to the supreme court, to the effect that respondent had complied with rule No. 6, when, as a matter of fact, material information respecting two certain events in the life of respondent prior to his coming to this State were fraudulently withheld by him, and that the board was not advised thereof. These events were: (1) That during the time respondent was residing in the city of Baltimore, State of Maryland, and there engaged in the practice

of law, he was charged by indictment with the crime of obtaining money under false pretenses and entered a plea of guilty thereto, and on the 22d day of January, 1909, was sentenced to serve a term of three years in the county jail, and was fined $5 and the costs of the case, and was committed to jail, and there remained until June 25, 1910, when he was pardoned by the governor of Maryland; (2) that on January 22, 1909, a disbarment proceeding was entered against respondent, which resulted in a judgment, whereby his name was stricken from the rolls of attorneys practicing before the supreme bench of the city of Baltimore, in the State of Maryland.

To this petition of the board the respondent filed his answer on January 31, 1914. In this answer he denied that any notice was ever served upon him of the disbarment proceeding aforesaid, and denied that, at the time he made his application to the board in this State, he had any knowledge of the disbarment proceeding. In fact, he said that he had no knowledge of the proceeding for more than a year after he had been licensed to practice law in this State. But his answer admits that he had knowledge of his indictment, sentence, and service of part of his sentence in jail, and of his pardon, as above set out, and also admits that he did not make disclosure of those facts to the board when he made his application for license to practice law in this State, but denies that he intended by nondisclosure of those facts to perpetrate a fraud on the board or upon this court.

By way of further defense; the answer pleads and relies upon the statute of limitations of two years contained in the act of 1903. Manifestly there is no merit in the respondent's plea of the statute of limitations. The petition of the board avers that it had only become advised of the existence of the fraud at the time of the filing of its petition, and we are clear that it was not the purpose of the legislature that the statute of limitations should begin to run until knowledge of the fraud had been brought home to the board.

Respondent's answer, after a statement of his unfortunate career in the State of Maryland, and of the necessities which confronted him when he made his application to the board to practice law in this State, submits to this court the question whether, under the circumstances, it was incumbent upon him to disclose to the board those facts of which he admits he did not make disclosure. There can, of course, be only one answer to this question. Good faith to the board and to this court required the disclosure, and his failure to make it was undoubtedly an imposition and fraud both upon the board of law examiners and upon this court. His application for a license was an implied representation that he was a man of good moral character and fit to be admitted to the practice of law. The board accepted this representation as made in good faith, and acted upon it probably without independent investigation of his character. All this he must have realized when he made his application, and when he received his license at the hands of this court.

State Board v. Shimer.

We cannot, of course, set the stamp of our approval upon the motive which we can see prompted the action of the respondent. It is said, however, in extenuation of his conduct, that his life since he has settled in Nashville has been upright. About this question there appears to be a difference of opinion. Numbers of his friends sustain his insistence, so far ɩs their knowledge of his conduct goes; but it is far from clear upon this record that he has led an upright life, since he was admitted to the bar of this State. On November 19, 1914, there was filed in this cause a statement by the grievance committee of the Nashville bar and library association, setting out sundry complaints which had been made to that committee touching the professional conduct of the respondent. We will not go into the details. Suffice it to say that we can see from admissions made by the respondent in an answer filed by him before the committee, and in an answer made by him to the bill filed by one of his clients in the chancery court of Davidson county, that his dealings with poor and ignorant clients, by his own admissions, place him in a very questionable attitude before this court, and go far toward convincing us that he should not by this court be licensed to continue such practices.

It was said by this court in Re S. J. Henderson, 88 Tenn., 531, 13 S. W., 413:

"Too much is staked upon the honesty and good conduct of lawyers for courts to wink at flagrant misconduct. They are trusted by the community with the

care of their lives, liberty, and property, with no other security than personal honor and integrity. It behooves the courts and the profession to see that their brotherhood keep clean records.''

In the present case, the petition is not in form a proceeding to strike the name of respondent from the rolls of this court, but we think it is in legal effect and substance such a pleading, yet somewhat broadened under our act of 1903, in that the license issued under that act may in this proceeding be revoked and canceled, in addition to the striking of the name of the attorney from the court rolls. The origin of the proceeding to strike an attorney's name from the rolls of the court was discussed by Judge Catron in *Smith* v. *State*, 1 Yerg., 228. He found it to be in a statute of Henry IV, which, after providing that all attorneys of good fame should be put upon the roll after examination of the justices at their discretion after being sworn to serve in their offices, then further provided:

''And if any such attorney be hereafter notoriously found in any default, of record, or otherwise, he shall foreswear the court, and never after be received to make any suit, in any court of the King. They that be good and virtuous, and of good fame, shall be received and sworn, at the discretion of the justices, and if they are notoriously in default, at discretion, may be removed upon evidence, either of record, or not of record.''

And said the court in the same case, speaking of the duty to strike from the roll:

"Who must perform this duty? The power which has conferred the appointment. This is, every court where the attorney is permitted to practice, for they equally extend the privilege. The principle is almost universal in all governments that the power which confers an office has also a right to remove the officer, for good cause, etc. . . . In all these cases, the tribunal is of necessity the judge of the law and fact, to ascertain which, every species of evidence can be heard, legal in its character, according to common-law rules, and consistent with our constitution and laws."

The court then proceeds to discuss the practice in such cases in England and in this State under the Act of 1815 (chapter 97). The practice, as laid down by him under our act, does not materially differ from what has been done in the present case, nor from what was done under the English practice. The second section of our Act of 1815 (see Scott's Revisals, vol. 2, p. 224) appears in part as section 5782 of Shannon's Code, as follows:

"If charges are preferred against an attorney or counsel to any court, they shall be reduced to writing, and a copy furnished the party accused, who may appear and show cause against the charges."

Section 1 of chapter 51 of our Act of 1817, and section 3 of chapter 66 of our Act of 1821, are codified in section 5781 of Shannon's Code, as follows:

"The several courts of this State may strike from their rolls any person not authorized to practice in such courts, and also any practicing attorney or coun-

sel, upon evidence satisfactory to the court that he has been guilty of such misdemeanor, or acts of immorality or impropriety, as are inconsistent with the character, or incompatible with the faithful discharge, of the duties of his profession.''

Section 5783 of Shannon's Code provides:

''The person stricken from the rolls under either of the foregoing sections, or for other good cause, shall not be permitted to practice the profession in any court of record in this State.''

Some of the cases in which this court has discussed the subject-matter in hand are *State* v. *Fields,* 8 Tenn. (Mart. & Y.), 137; *Smith* v. *State,* 9 Tenn. (1 Yerg.), 228; Lawyer's Tax Cases, 55 Tenn. (8 Heisk.), 565; *Davis* v. *State,* 92 Tenn. (8 Pick.), 634, 23 S. W., 59; *Brooks* v. *Fleming,* 65 Tenn. (6 Baxt.), 331; *In re S. J. Henderson,* 88 Tenn. (4 Pick.), 531, 13 S. W., 413; *Hunt* v. *McClanahan,* 48 Tenn. (1 Heisk.), 503; *Ingersoll* v. *Coal Co.,* 117 Tenn. (9 Cates), 263, 98 S. W., 178, 9 L. R. A. (N. S.), 282, 119 Am. St. Rep., 1003, 10 Ann. Cas., 829; *In re Cameron,* 126 Tenn. (18 Cates), 614, 151 S. W., 64.

The duty is an unpleasant one for any court to discharge, but, upon the facts of this record, we are constrained to grant the prayer of the petition, and we accordingly adjudge that the license heretofore granted by this court to H. Carhart Shimer be, and the same is, hereby ordered to be delivered up to the clerk of this court for cancellation, and his name will be stricken from the rolls of the attorneys and counselors practicing at the bar of this court.