CAROL N. KELLY, Respondent, *v.* HOWARD C. KELLY, Appellant, and DOROTHY CAMMELL KELLY, Corespondent, Appellant.

First Department, May 31, 1940.

*James F. Donnelly* of counsel [*Walter F. Sloan* with him on the brief; *McManus, Ernst & Ernst,* attorneys], for the appellant Howard C. Kelly.

*Benjamin Swartz,* for the corespondent-appellant.

*George A. Spohr, Jr.,* of counsel [*Phillips, Mahoney & Fielding,* attorneys], for the respondent.

O'MALLEY, J. After obtaining a Nevada decree of divorce from the plaintiff, the defendant married the corespondent. The plaintiff then brought this action for divorce, predicating adultery on the fact of the second marriage.

Generally speaking, the principal question involved is the validity, so far as the plaintiff is concerned, of the Nevada decree, and more specifically, whether the plaintiff had so far participated in that action as to be bound thereby.

Service of process in the Nevada action was effected upon the plaintiff in California. It is not contended that she was a resident of Nevada or that the last matrimonial domicile of the parties had been in that jurisdiction.

The plaintiff through a Nevada attorney filed a demurrer, a notice of motion for temporary alimony, and an affidavit in support of the motion for allowance. She does not dispute that this constituted a general appearance, assuming that the attorney who thus appeared had been duly authorized.

Thereafter, however, the parties through their attorneys entered into a stipulation providing that plaintiff might withdraw her notice of motion for temporary alimony and her demurrer " from the files and records of the   *   *   *   Court to the same extent as if they had not, nor had either thereof, been filed."

The stipulation also provided that the court might make such order or orders as might be necessary to permit withdrawal of the notice of motion and the demurrer and, further, that upon such withdrawal the action was to be " in the same status or condition as though nothing had been done by the above named defendant [plaintiff herein] in said action."

On the day the stipulation was filed, July 14, 1937, the court entered an order providing that the notice of motion and the demurrer were permitted to be withdrawn and that they were withdrawn " from the files " and that the status of the action then was " the same as if said Notice of Motion for Allowances or said Demurrer had not been filed or anything else had been done by said defendant in said action." The day following, an inquest was taken and plaintiff's default noted for failure to appear or plead to the complaint within the statutory period. There was also spread upon the minutes the filing of the stipulation and its adoption by the court.

After the inquest, the court found again that the plaintiff had not appeared in the action within the time allowed by law or up to the time of the trial, and had not appeared at the time of the making of the finding. The judgment entered the same day, July 15, 1937, likewise recited that the plaintiff had not appeared and that because of her " failure to *appear*, answer, *demur* or otherwise plead " (italics ours) her default had been taken.

After the defendant on the strength of this Nevada decree had gone through a marriage ceremony with the corespondent in New Jersey, the plaintiff instituted this action for divorce. The defendant, on the basis of the Nevada decree, moved for summary judgment. Special Term denied the motion, stating that on all questions he found in favor of the plaintiff.

The defendant, following this denial, obtained a *nunc pro tunc* decree in the Nevada action, but without notice to the plaintiff. This decree, entered the same day it was applied for, was obtained almost two years after entry of the original decree. It purported

to amend the original decree merely by striking out recitals that plaintiff's notice of motion and demurrer were withdrawn "from the files." The stipulation and order on which the original decree was based were referred to in the decree entered *nunc pro tunc* and made a part thereof. The decree, however, failed to recite that the court deemed it still had jurisdiction over the plaintiff.

In our opinion, the Nevada decree in its original form and as entered *nunc pro tunc* should not be given validity as against the plaintiff. The clear intention of the proceedings based upon the stipulation was to place the plaintiff in the position of never having appeared or having subjected herself to the jurisdiction of the Nevada tribunal.

As it is not contended that the plaintiff at the time was a Nevada resident or that the matrimonial domicile of the parties was in that State, the decree was not binding upon the plaintiff and should not be given recognition by this court. Certainly, this is so if, as plaintiff claims and as has been held at Special Term, she still was a resident of this State where the parties had married. (*Lefferts* v. *Lefferts*, 263 N. Y. 131, 135; *Fischer* v. *Fischer*, 254 id. 463; *Dean* v. *Dean*, 241 id. 240.)

We are of opinion that Special Term had ample evidence upon which to find that at all times in question the parties were residents of this State, and that their matrimonial domicile was here. True it is, that at the time of the Nevada proceedings the plaintiff was living in California. She claims, however, that she was residing there in her mother's house from necessity, the defendant having forced her from her home in this State. So, too, her employment in that jurisdiction was necessitated by the fact that she desired to support herself and her children. In addition, she claims that she never had the intention of taking up permanent residence in California and always regarded New York as her home.

As already stated, the parties were married here in 1926, and maintained their residence here until 1934, and at all times, when living together, regarded New York city as their home. The defendant maintained an office here and after procuring the Nevada decree, returned here and continues to reside in this State with the corespondent. Whatever voting residence the plaintiff had was in this State, and she neither registered nor voted in California. Since returning from California in August, 1938, she has continuously resided here with her children.

In the circumstances, therefore, Special Term properly held that plaintiff had never abandoned her New York residence and that the last matrimonial domicile of the parties was in this State. (*Nasser* v. *Nasser*, 249 App. Div. 755; *Sattenstein* v. *Sattenstein*,

243 id. 61.) Assuming, as contended by the defendant, that at the time plaintiff was a resident of California, the law of that jurisdiction likewise would not recognize as to her the validity of the Nevada decree. (*Kadello* v. *Kadello*, 220 Cal. 1; 29 P. [2d] 171; *Delanoy* v. *Delanoy*, 216 Cal. 27; 13 P. [2d] 719.)

The general appearance of the plaintiff in the Nevada litigation by virtue of her demurrer and notice of motion for alimony was properly withdrawn within the discretion of the court, and any proceedings thereafter, particularly in view of the form of the stipulations and the two orders of the court, were not binding upon the plaintiff.

In *Harvey* v. *Fiduciary Trust Co.* (299 Mass. 457; 13 N. E. [2d] 299), where the equivalent of a general appearance had been made in an Ohio litigation but withdrawn upon leave of court, it was held that after the withdrawal the party who had withdrawn was not bound by subsequent proceedings, particularly by the judgment thereinafter entered.

It was there stated: " Naturally there was no personal service upon the defendant trustee in Ohio. The plaintiffs do not contend that by virtue of any appearance in the proceedings in Ohio the defendant trustee was a party to those proceedings at the time when judgment was rendered so as to be personally bound by the judgment. True, the defendant trustee, while protesting that it did not appear at all, made an appearance in the proceedings in Ohio by filing a motion to dismiss the application for want of jurisdiction in the court. That appearance under Ohio law, may have been a general one. [Citing cases.] If the defendant trustee had remained a party to the proceedings in Ohio after its motion to dismiss for want of jurisdiction had been overruled and during the hearing on the merits in the common pleas court, it might have been bound by the judgment. After a general appearance a defendant cannot, by withdrawing his appearance or a pleading in which his appearance is expressly or impliedly contained, escape from the jurisdiction of the court without its consent. [Citing cases.] But in this case the defendant trustee, although it moved to dismiss the application on a ground relating to the jurisdiction of the court and thus may have not only waived service but also appeared generally (*Klein* v. *Lust*, 110 Ohio St. 197, 205; 143 N. E. 527), expressly disclaimed making any appearance at all, and never did appear except through the filing of the motion. Its appearance thus made was withdrawn when the motion in which it was contained was ' withdrawn upon leave of court first had ' in the common pleas court of Miami County, Ohio, on appeal. If the withdrawal had been merely an abandonment of the point

taken in the motion, leaving the defendant trustee a party to the case, no leave of court would have been needed. It is immaterial whether or not the court erred in allowing such a withdrawal. After that withdrawal, the defendant trustee was not a party to the case, had no right to be heard, and could not be bound by the judgment."

Here, the Nevada court not only gave its permission to the withdrawal of the notice of motion and demurrer but, following the terms of the stipulation, expressly ordered that upon such withdrawal the status of the action was to be the same as if they had not been filed or anything else done by the defendant (plaintiff here).

To the same effect as *Harvey* v. *Fiduciary Trust Co.* (*supra*) are such decisions as *McArthur* v. *Leffler* (110 Ind. 526; 10 N. E. 81; *Graham* v. *Spencer* (14 Fed. 603); *Forbes* v. *Hyde* (31 Cal. 342); *Chesapeake & Ohio R. Co.* v. *Coffey* (37 F. [2d] 320); *Dana* v. *Adams* (13 Ill. 691).

It follows, therefore, that the decree of the Nevada court was in no way binding upon the plaintiff, and its attempted amendment *nunc pro tunc*, having been without notice to her and at a time when she was not subject to the jurisdiction, likewise was a nullity.

Undoubtedly the Nevada court had power to correct its judgment by the entry of a *nunc pro tunc* decree, and whether jurisdiction so to do was properly exercised would be a question for the tribunals of that State. (*Curnen* v. *Curnen*, 155 App. Div. 536, 543; *Goldberg* v. *Mayer*, 243 id. 477; affd., 270 N. Y. 660.) However, by such amendment *nunc pro tunc* the Nevada court could not reassume jurisdiction over the person of the plaintiff of which it had already divested itself.

Furthermore, the *nunc pro tunc* judgment again, like the original decree, recited the withdrawal by the plaintiff, with the permission of the court, of her motion for alimony and her demurrer. Under the very terms of this *ex parte nunc pro tunc* decree, therefore, there was again recognition of the fact that with the permission of the court the plaintiff had withdrawn from the Nevada litigation as of the date of the original order adopting the stipulation. No effect, therefore, should be given to the amended decree.

In our opinion, the trial court properly refused defendant permission to reopen the case. His application was made after rendition of decision and was predicated upon defendant's desire to introduce into evidence two further transcripts of the Nevada record for the purpose of showing that the order entered upon the stipulation, purportedly signed and filed July 14, 1937, had in

fact not been signed and filed until after the trial and in September, 1938.

In the first place, the defendant had ample time to procure this evidence before the trial herein and to make proper tender of proof before the case was closed. Moreover, the defendant himself had already offered in evidence a transcript of the Nevada proceedings containing recitals that the order had in fact been signed and filed as of July 14, 1937, which recitals were also found in the *ex parte nunc pro tunc* decree of February 23, 1939.

Assuming that the defendant could contradict his own record in this respect, it would seem that under the circumstances Special Term properly exercised its discretion in refusing to open the case for this particular purpose.

So, too, the corespondent's motion to vacate and set aside the interlocutory judgment, so far as it adjudged her guilty of the charges made, and to enable her to come in and defend, was likewise properly denied. True it is that she was not present at the trial nor was she examined as a witness. However, she does not deny that she had notice of the pendency of the suit; and she did not make her application under section 1151 of the Civil Practice Act until July 11, 1939, the interlocutory decree having been made June 23, 1939. At this time, the issues had been disposed of and she should be confined to participation only in subsequent proceedings including the right of appeal which she has here taken. (*Tellegen* v. *Tellegen*, 205 App. Div. 241, 245, 246; *Boller* v. *Boller*, 111 id. 240; *Gunsberg* v. *Gunsberg*, 200 id. 870.) Moreover, it is to be noted there is no issue to be tried concerning the alleged adultery. The second marriage of the defendant is conceded and the corespondent could do no more than rely upon the validity of the Nevada decree.

She seeks, moreover, to create triable issues in no way different from those raised by the defendant himself and which had already been decided. By her right of appeal, which she has exercised, she was amply protected on the present record.

It follows, therefore, that the judgment and orders appealed from should be affirmed, with costs.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur; GLENNON, J., dissents.

Judgment and orders affirmed, with costs.