## INGLE v. KIVETT.—201 S. W. (2d) 545.

Middle Section.   January 20, 1947.

Petition for Certiorari denied by Supreme Court, May 5, 1947.

John P. Davis and G. Howard Nevils, both of Tazewell, and James M. Meek, H. H. McCampbell, Jr., and Ray Hauk, all of Knoxville, for plaintiff.

R. R. Kramer, of Knoxville, and J. R. Ketron, of Tazewell, for defendant.

HOWELL, J. This is a disbarment suit filed by the complainant Ann Cameron Ingle against the defendant J. Kyle Kivett in the Chancery Court of Claiborne County, Tennessee. G. Howard Nevils, a member of the Claiborne County bar and a special committee of the Bar Association of Tennessee filed intervening petitions and became parties complainant.

The defendant filed an answer to the petitions and amendments in which he denied each item in which he was charged with wrongdoing or unprofessional conduct.

The case was heard on oral testimony before Honorable A. F. Officer, Chancellor of the Fourth Chancery Division of the State, who was designated to sit in the case by the Chief Justice on account of the ill health of the regular Chancellor.

Upon the hearing the Chancellor found that the defendant had been guilty of unprofessional conduct and dishonesty in connection with a number of divorce cases filed by him as attorney in the Circuit Court of Claiborne County and in connection with a forged resignation of Judge A. G. Shumate on the minutes of the County Court of Claiborne County of September 2, 1942.

The Chancellor entered a decree permanently striking the name of the defendant from the list of members of the bar and prohibiting him from practicing law in the State.

After proper procedure the defendant has appealed to

4

this Court and has filed the following assignments of error:

"1. The weight of the evidence is against the findings and decree of the Chancellor and in favor of the contention of the defendant.

"2. The Court erred in finding that the defendant should be permanently disbarred and in decreeing permanent disbarment.

"3. The decree of permanent disbarment is excessive or excessively drastic and should be modified.

"4. The Court erred in finding and in so decreeing that the defendant, J. Kyle Kivett, was responsible for the forging of the resignation of Judge A. G. Shumate, which appeared on the monthly minutes of the County Court on September 2, 1942, for the reason there is no direct evidence introduced connecting the defendant with said forgery, and no evidence that he even had access to the records of the County Court at that time."

Many acts of the defendant which amount to misconduct were charged in the original and the intervening petitions and amendments. The specific act which seems to have prompted the filing of the original petition was that the defendant had represented the husband of petitioner Mrs. Anne Cameron Ingle and had by fraud obtained a divorce for him, Judd Ingle, from her, in the Circuit Court of Claiborne County. She, upon discovering that her husband had secured the divorce, filed a bill in the Chancery Court of Claiborne County seeking to set aside and have his divorce decree declared null and void upon the grounds that she was a resident of an adjoining County and had not been served with any process in the divorce suit and had no notice or knowledge of it until after the decree was entered against her. She

charged in her bill that the return of the process issued in the divorce case was fictitious and fraudulent and that there was no such person as the deputy sheriff who purported to sign the return upon the summons. Upon the hearing of this case in the Chancery Court the complainant testified that she had not been served with any process in the divorce case and there was testimony that there was no such person as the deputy whose name appears on the return. The Circuit Court Clerk testified that no deputy by that name was known to her or on her list of deputies and no one had appeared to claim the fee for service of the process and she could find no one to pay this fee to and the Sheriff testified that he had no such deputy. The defendant in that case was represented by the defendant here who had filed the divorce bill for him and no proof was introduced for the defense. Defendant's position in that case was that the proof offered by the complainant was not sufficient to overcome the return of the officer as it appeared on the summons. The Chancellor found as a fact that:

"Process was issued and the record shows that the process was handed to Judge Kivett, and was later found in the file, showing a return by this man, H. A. Hobbs. The testimony shows that there is no such deputy in Claiborne County, no one being able, as far as this record shows, to locate him. I find that this is a fictitious return and a decree will be granted directing that the decree to the defendant be set aside for fraud."

That case was taken to the Court of Appeals by a writ of error by the defendant here, Judge Kivett, and upon the hearing the Court of Appeals, Eastern Section, affirmed the decree of the Chancellor and declared the divorce decree null and void as based upon a return by

6

a fictitious or nonexisting person. In the opinion in that case the Court of Appeals said in part:

"The Chancellor seeing and knowing the grave imputations herein very properly (see Gibson's Suits in Chancery, Higgins and Crownover, 4th Ed., secs. 1140, 1141, page 957) called the high sheriff who verified the fact that there was no officer in Claiborne County by that name of the one who had made the purported return. No explanation or offer to counter this fact and the imputations herein was offered. This left at the door and on the head of the attorney who had filed the divorce proceeding a very grave and serious charge. This charge should not go unanswered. If members of this bar and the bar of the chancery court are dealing in such a practice they should be summarily and severely dealt with. If as a matter of fact the return of an officer has been forged or is fictitious this is a fraud on the court. If a member of the bar is guilty of such a practice it is the duty of the court and bar to make a thorough investigation thereof and act accordingly.

"In view of the seriousness of the imputations herein we think a copy of this opinion should be sent to the President of the State Bar Association for a full investigation of the entire matter. It is our hope that no member of this bar is guilty of such a practice. We choose to think that counsel has a reasonable explanation and that this has not been offered because he did not realize the seriousness of the imputations herein."

The petition for disbarment charges that the defendant J. Kyle Kivett wrote the return on the summons in the case of Ingle v. Ingle and signed the name of the fictitious deputy sheriff thereto and is guilty of forgery.

The petition also made similar charges against the defendant in seven other divorce cases filed in the Circuit

Court of Claiborne County, viz., George L. Weaver v. Elizabeth Schaubb Weaver, J. T. Jordan v. Flora Rhodes Jordan, Jeremiah J. Daly v. Betty Daly, Dora Lee White v. Charlie D. White, Agnes Dugger Lowe v. Thedford Lowe, R. T. Lowe v. Cora Brown Lowe and Ester Lang Stampfer v. Charles Stampfer.

The petition charged that in each of these cases the return on the process was by a fictitious person, that there were no deputies with names as signed to these returns; that the defendant J. Kyle Kivett told the Circuit Court Clerk in each of these cases except three that he had paid the deputy for serving the process and he signed the execution docket stating that he had paid the fee. In the three exceptions the clerk had mailed checks for the fees to the named deputies and they had not been returned to the bank for payment.

These divorce cases mentioned had been tried on depositions which purported to have been taken on notices. No such notices were filed or appear in the records. The defendant testified that he wrote the notices and gave them to the various plaintiffs to be served on the same day that the divorce bills were filed. Other charges of misconduct and forgery were made against the defendant. One was that he had changed the name of one of the parties to a deed on the records in the Registers' Office at Tazewell, Tennessee, and this was detected by the Register. He was also charged with forging a resignation of A. G. Shumate as County Judge of Claiborne County and with other instances of misconduct.

The defendant J. Kyle Kivett is thirty-four years of age, attended Cumberland University Law School at Lebanon, Tennessee, where he graduated in 1936. He has been practicing law for about ten years and has been the County Judge of Claiborne County since September 1942.

He is also a member of the Democratic Election Committee and Chairman of the Election Board of Claiborne County.

The defendant Kivett prepared the original bills in these eight divorce cases and signed them as attorney for the various plaintiffs, he administered the oaths to seven of the plaintiffs as County Judge and says that he prepared the summons in each case and wrote the form of the return leaving the day of the month and name of the officer serving each one blank, and gave these summons' and notices to take depositions to each plaintiff who was to have them served. The remaining or eighth case was sworn to by the plaintiff Weaver in Florida.

The record discloses that the defendant did not produce as a witness any of these plaintiffs or any of the purported officers whose names appear as having served the summons. He does not seem to have been acquainted with any of these plaintiffs except Judd Ingle until about the time he was employed to file the divorce bills. The defendant represented Ingle in the suit brought by Anne Cameron Ingle to set the divorce decree aside and told him that he would "file an answer for him, and defend it to the extent to see whether or not she as complainant could establish the charges she alleged in the bill;" and says "that is what I did." The defendant did go to see Judd Ingle's father George Ingle who was in the penitentiary at Brushy Mountain and George Ingle refused to make any statement. He says he saw Judd Ingle and asked him if he would testify in the case to set aside the divorce decree and Judd said "all I am going to testify is I don't know a thing about it. I aint going to tell anybody anything only I don't know a thing about it."

Judd Ingle testified in this disbarment case and said that he had paid the defendant $50 to get the divorce for

him, that no summons had been given to him, that he did not know anybody named "H. A. Hobbs," whose name was signed as Deputy on the return of the summons and that the defendant had not talked to him about testifying in this case. Judd further testified that the defendant did ask him to sign an affidavit that he had had the summons served in the Chancery case to set the divorce decree aside and he told him he would not and that "I left the whole thing up to him."

The evidence in these divorce cases was by depositions and while the captions in most cases say that the witness was duly sworn the records do not show by whom the oaths were administered. When asked about this by the Court the defendant replied that he "just simply took them down in my office."

It does not appear that any orders pro confesso were entered in a number of these divorce cases. When asked why he did not take any pro confessos in these cases the defendant answered: "I don't know; it was just an oversight on my part, to put it in the decree."

The defendant does not offer any satisfactory explanation of the many irregularities appearing in the records in these eight divorce cases, six of which were filed in November 1943 and two in March 1944. Only one of the plaintiffs and none of the officers involved could be found.

We are constrained to concur with the Chancellor in his findings as to these divorce cases and the Shumate resignation as the record amply justifies his conclusions. Certainly if the proceedings in these cases had been proper, all the notices to take depositions would not be lost, and these plaintiffs and the officers who signed the returns on the summons could be found or their absence

accounted for. They were all said to be residents of defendant's home county.

▉▉ The Court does not deem it necessary here to engage in any lengthy discussion as to the qualifications of a lawyer or his duty to the Courts in which he practices and to the public. Much has been written on the subject and these matters are well known to the members of the bar. A lawyer is an officer of the Court and the Court has a right to rely upon his integrity and to believe his statements made in open Court as to the condition of a record and the regularity of the proceeding. While the records do not affirmatively show that this occurred in these divorce cases we must presume that the trial judge was given to understand that each of these cases had been properly filed, that the defendants were properly before the Court, that pro confessos had been regularly entered, that proper notice had been given of the taking of the depositions and that these depositions had been legally subscribed and sworn to by the witnesses.

▉ An examination of the records in this case and in the divorce cases involved which are filed herein as exhibits, discloses that the defendant J. Kyle Kivett does not have a proper appreciation of the obligations, duties and responsibilities of a member of the bar of this State and that he is wholly unfit to remain a member of this bar.

▉ Divorce cases are unlike ordinary lawsuit between two or more parties. The State and Society are interested and it is the duty of the trial Judge not only to see that justice is done between the parties but also to protect the interests of society in general and it is the duty of the lawyer as an officer of the Court to assist the Judge in seeing that this is done. In the recent case of Osborne

v. Osborne, Tenn. App., 197 S. W. (2d) 234, 236, the Eastern Division of this Court said:

"A divorce action is really a triangular proceeding where in addition to the parties the State through the court is a quasi party. It is for this basic reason the courts afford the fullest possible hearing in the matter and at all times must guard against collusion, fraud and any unfair practice or undue advantage that one party might take of the other."

■ The record in this case amply justified the Chancellor in permanently disbarring the defendant. He did not abuse his discretion.

The applicable sections of the Code are as follows:

"9974. Attorneys may be disbarred or suspended for what causes.—Any attorney, solicitor or counselor at law admitted to practice in the courts of the state may be disbarred or suspended from the practice of law—

"(1) Who shall commit or may have committed, any infamous crime or misdemeanor involving moral turpitude.

"(2) Who shall seek out any person having a claim for personal injury, or having any other ground of action, in order to obtain employment by such claimant, or shall employ agents or runners for like purposes, or pay or reward, directly or indirectly, those who bring, or influence the bringing, of such cases to him or his office.

"(3) Who shall wrongfully retain money or property of his client for an unreasonable time after demand made.

"(4) Who shall be guilty of any fraudulent act or misrepresentation in proceedings to obtain admittance to the bar.

''(5) Who shall be guilty of any unprofessional conduct, dishonesty, malpractice, or any conduct which renders him unfit to be a member of the bar.''

''9975. Punishment.—In cases arising under the first subdivision of the preceding section, the judgment of the court must be that the name of the attorney shall be stricken from the roll of attorneys, solicitors and counselors, and that he be excluded from practicing as such attorney or counselor in all the courts of this state; and, upon conviction, in cases under other subdivisions of the preceding section, the judgment shall be permanent or temporary deprivation of the right to practice law, or a censure or reprimand, according to the gravity of the offense.''

In the recent case of Schoolfield et al. v. Bean et al., 26 Tenn. App. 30, 167 S. W. (2d) 359, 368, this Court said:

''The trial judge is not vested with an arbitrary discretion to impose any penalty he pleases within those limits, but he should in each case endeavor to make the punishment fit the offense and impose a penalty commensurate with the seriousness of the charges of which the attorney is adjudged guilty. This is what is meant by a reasonable discretion.

''In 5 Am. Jur., 'Attorneys at Law,' sec. 253, it is said: 'The power to disbar is not an arbitrary and despotic one to be exercised on the pleasure of the court, or from passion, prejudice or personal hostility; it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court as the rights and dignity of the court itself.'

''The contention is made on behalf of the defendants that the fixing of the punishment for the violation of the statute lies within the discretion of the trial court, and

that for all practical purposes his judgment in this respect is conclusive upon the appellate courts. There was at one time high authority for this view, but the better reasoning seems to be, and the authorities are now practically uniform in holding that the judgment of the trial court in this regard is reviewable to determine whether there has been an abuse of his discretion.''

The charges in this case come within Subsections (1) and (5). of Sec. 9974, and the question involved is whether or not the defendant has been guilty of such conduct as shown by this record as renders him unfit to be a member of the bar of this State. Without any reference to the other charges in the disbarment petition we are of the opinion that the conduct of the defendant in the eight divorce cases demonstrates his unfitness as a lawyer. As said in the Bean case, supra:

''We find no extenuating circumstances such as youth or inexperience or ignorance of the ethics of the profession, or even the pressure of necessity which impelled them to be overzealous in the pursuit of business.

.    .    .    .    .

''We are not unmindful of the importance of the case to the defendants. The duty of disciplining an attorney is an unpleasant one for us, but as said by Chief Justice Turney in Re Henderson, 88 Tenn. 531, 13 S. W. 413, 415, 'The conclusion is painful, but imperative. Too much is staked upon the honesty and good conduct of lawyers for courts to wink at flagrant misconudct.' ''

The assignments of error are overruled and the decree of the Chancellor permanently disbarring the defendant is affirmed. The appellant and the sureties upon the appeal bond will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.