KATHERINE G. BARNES

*v.*

G. A. KYLE et al.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

Rehearing Denied October 4, 1957.

530

Dick Johnson and Dugger & Dugger, Elizabethton, for plaintiff.

Roy C. Nelson, Lodge Evans, John L. Bowers, Jr., Banks, Street & Banks, Elizabethton, for defendants.

Mr. Justice Swepston delivered the opinion of the Court.

This phase of the above-styled case is before us on writ of *certiorari*.

This opinion deals only with the question whether Hallie K. Riner should have been allowed to intervene in the principal case.

That case was commenced by Katherine G. Barnes filing her original bill for the purpose of removing as a cloud upon her title the claim of the City of Elizabethton under various and sundry conveyances. She based her claim to some 200 lots located in the City of Elizabethton on a tax deed she had obtained from the State.

The city filed an answer and cross-bill against Mrs. Barnes and her husband, Howard Maxwell Barnes, asserting title to the same lots and attacking Mrs. Barnes' title on numerous grounds, including fraud on the part of Mr. and Mrs. Barnes.

The Chancellor and the Court of Appeals made a concurrent finding of facts with regard to the fraud and we denied the petition for *certiorari* filed by Mr. and Mrs. Barnes to this Court and concurred in the result.

The principal case was heard on depositions and the cross-defendants, Mr. and Mrs. Barnes, did not themselves testify nor did they offer any other testimony but relied solely on the deed from the State to Mrs. Barnes. After the case had been submitted to the Chancellor for decision, Miss Hallie K. Riner, a practicing and duly licensed attorney, filed an intervening petition for the purpose of obtaining a hearing before the Chancellor on alleged charges and imputations of fraud on her part while acting as State Land Agent of Carter County and to clear her professional name of any and all such charges. The petition was dismissed by the Chancellor without a hearing and Miss Riner prosecuted a writ of

error to the Court of Appeals, which Court reversed the Chancellor and held that Miss Riner had a right to intervene to protect her reputation because of the imputations of fraud charged against her in the cross-bill by the City of Elizabethton, to which she was not made a party nor in which proceeding was she called as a witness. The city has filed its petition for *certiorari* which was granted and we now dispose of the matter.

Her intervention petition is predicated on the theory that her professional standing as an attorney and the incidental right to enjoy the confidence and respect of the Courts, of which she is an officer, and of the fellow-members of the Bar and her right and moral competence to practice her profession and earn a livelihood and property rights which she is entitled to have protected. It is charged that these rights have been seriously infringed upon and damaged in this case by the imputations and charges of fraud made by the city without notice of an opportunity to be heard, and that she has been thus effectually deprived of her rights without due process of law as vouchsafed to her by the Constitutions of the United States, Amend. 14, and of the State of Tennessee, art. 1, sec. 8; that these rights cannot be vindicated in any other Court proceeding because of the privilege of immunity which cloaks judicial proceedings.

The Court of Appeals, in upholding her right to intervene, stated that it found no evidence that the city acted malevolently in injecting petitioner's name in this contest between third parties; that it is merely a case where a material and important issue could not be developed without involving the professional conduct of a member of the Bar; that petitioner being without remedy other-

wise when so caught up by circumstances beyond her control should be entitled to seek vindication in the very proceedings in which the injury occurred; that the right to practice a profession is a property right, citing *State Board of Medical Examiners v. Friedman,* 150 Tenn. 152, 263 S.W. 75; *Janeway v. State Board of Chiropractic Examiners,* 33 Tenn.App. 280, 231 S.W.2d 584, that deprivation or invasion of the right should not be left to chance and beyond the pale of legal remedies.

The opinion then cited the case of *Dobb v. Reese,* 216 Ind. 449, 24 N.E.2d 995, 128 A.L.R. 574. This is the only case found by counsel or the Court where intervention was allowed under similar circumstances. That was a suit to set aside for fraud a decree of adoption alleged to have been procured through the fraud of Dobb, who acted as attorney for the adoptive parents, wherein Dobb was not made a party to the suit but was allowed to intervene for the purpose of protecting his reputation and standing. This case will be referred to *infra.*

The Court of Appeals was further of the opinion that the right to intervene could well be predicated on the interest of the public in the integrity of the Bar as well as upon the duty of the Courts themselves to enforce the observance of ethical standards by attorneys who are officers of the Court; that it is not in the public interest for an attorney to practice under a cloud of suspicion.

The Court then said:

"This Court in *Ingle v. Ingle,* referred to in *Ingle v. Kivett,* 30 Tenn. App. 1 [201 S.W.2d 545], upon its own motion took note of grave unprofessional conduct of an attorney and referred the matter to the Tennessee Bar

Association which resulted in the disbarment suit of *Ingle v. Kivett, supra,* and, more recently, in *Motor Ins. Corp. v. Mallarcher,* Hamilton Equity, we recognize the right of an attorney to complain of a finding reflecting upon his professional conduct.''

The Court of Appeals then states correctly that petitioner has no interest in the *subject matter* as provided in T.C.A. sec. 20-116, that is, that her rights are not in any way connected with the property involved in the principal case, but holds that her rights derive from an entirely different source and are protected by Art. 1, sec. 17, of the Constitution of Tennessee, providing as follows:

''That all Courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay * * *.''

The Court then again refers to *Dobb v. Reese, supra,* in which the Indiana Court applied in similar fashion the almost identical constitutional provision.

With all deference to the able Court of Appeals we are of opinion that this constitutional provision cannot be given the broad and perhaps unlimited construction found in the Court of Appeals opinion. The phrase ''an injury done him'' necessarily means a legal injury, that is, a violation of his legal rights in some way, or a violation of law that affect him adversely.

In 11 Am.Jur. 1124, section 326, it is said:

''The cognate constitutional provision guaranteeing to every person a remedy by due course of law for

injury done him in person or property (and usually also for injury done to his reputation) is found in the Constitutions of many of the states.[6] It means that for such wrongs as are recognized by the law of the land, the Courts shall be open and afford a remedy,[7] or that laws shall be enacted giving a certain remedy for all injuries or wrongs.[8] * * *''

Under Note 6 will be found the citation of cases from a large number of states.

Then in the 1956 Supplement, under section 326, will be found cited *Cason v. Baskin,* 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, from which the text of the Supplement is taken to this effect:

''That the words 'shall have remedy,' in such a constitutional declaration have reference to such remedy as may be provided by statute or common law, and do not constitute a delegation to the Courts of the power to legislate in order to provide a remedy; that the word 'injury' as employed in such a constitutional declaration implies the doing of some act which constitutes an invasion of a legal right, and cannot be considered as referring to all evils which may afflict mankind.'' (The word ''afflict'' is ''affect'' in the opinion of the Court.)

In 16A. C.J.S. Constitutional Law sec. 709c, p. 1214, referring to injuries within the guaranty the black type states:

''The constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations

of established law of which the courts can properly take cognizance." The text thereunder is supported by a number of cases.

In 43 C.J.S. p. 1109, it is said that the term "injure" has an accurate meaning well-known to the law gathered no doubt from its derivation, citing *Krom v. Antigo Gas Co.*, 154 Wis. 528, 140 N.W. 41, 143, N.W. 163, 164, in which case it is said:

"The word comes from the Latin words 'in,' meaning against, and 'jus,' meaning a right and signifies something done 'against the right' of another person, producing either nominal or substantial damages."

In 25 C.J.S. p. 996, with reference to the phrase *"damnum absque injuria,"* it is said:

"The idea contained in the phrase is expressed more explicitly in the maxim, *Ex damno sine injuria non oritur actio."*

Then note 24 referring to *Alabama Power Co. v. Ickes,* 302 U.S. 464, 58 S.Ct. 300, 303, 82 L.Ed. 374, there is quoted as follows:

"It is an ancient maxim, that a damage to one, without an injury * * * does not lay the foundation of an action; because if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain." See also 1 C.J.S. Actions sec. 15, p. 1005, to the same effect.

■ In the instant case it is perfectly clear that the city sought no relief against Miss Riner, did not make her a party, the judgment is not binding upon her in any way and the city did not infringe in any way upon her legal

rights. The city had a right to bring this cross-bill against Mr. and Mrs. Barnes to bring out all of the facts tending to show the fraudulent conduct of Barnes in that he was the real actor and simply used his wife as a conduit to take and hold title for his own benefit. Miss Riner, however, was neither a necessary nor a proper party because no relief was sought against her nor did she have any interest in the subject matter, which was the title to the property.

Many other instances of damage without legal injury can be cited. For instance, the rule in divorce cases with regard to the right of a corespondent to intervene. In 27 C.J.S. Divorce sec. 91, p. 674, last paragraph, the text states:

"Unless authorized by statute the person charged as *particeps criminis* with defendant in an act of adultery on which the suit is based cannot intervene to protect his character."

Then in Notes 15 and 16 are cited the supporting cases. It appears from the New York case of *Kelly v. Kelly,* 259 App.Div. 598, 30 N.Y.S.2d 273, and the case of *Simons v. Simons,* 182 Misc. 860, 49 N.Y.S.2d 929 (the latter cited in the Pocket Part) that the New York statute permits a corespondent to appear *not as a party* but simply for the purpose of defending the charges as they affect her or him. In Note 16, however, is cited the Illinois case of *Leland v. Leland,* 319 Ill. 426, 150 N.E. 270, in which State there is no such statute. The Court refused to allow the corespondent to intervene. Also in the Mississippi case of *Hulett v. Hulett,* 152 Misc. 476, 119 So. 581, the Supreme Court reversed the Trial Court for allowing

several named corespondents to intervene and file answers.

17 Am.Jur. 294, section 279, also states that there is no right unless by statute and cites the Kansas case of *Howell v. Howell* (*Herriff*), 87 Kan. 389, 124, P. 168, and the annotation in 1 A.L.R. 1414.

Then with reference to fraud, in 37 C.J.S. Fraud sec. 77, p. 369, it is stated:

"All persons who participate in the fraud may be, but are not required to be, joined as defendants."

Then further down in the text attention is called to the fact that joint tort feasors are also severally liable, hence it is not necessary to join all the parties participating. And, of course, the same statutory rule applies in tort cases in Tennessee.

It seems clear, therefore, that no right to intervene is afforded Miss Riner either by the Constitution or by the statutory or the common law of this State. Therefore, to allow her to intervene is an invasion of the legislative field. If we are going to allow her to intervene because she is an attorney and has a property right in her right to practice law, then what are we to say about the right of a minister of the Gospel to intervene in a suit where he may be charged with being a corespondent in a divorce case; or the case of two surgeons jointly operating on the same patient and only one of whom is being sued, but the testimony reflects upon the lack of the skill of both; or in a case of fraud where the principal alone is sued for the fraudulent act of his agent; or the master who alone is sued for the negligent act of his servant. Each of these has a property right consisting of the right

to follow his vocation and to protect his reputation in relation to that vocation against any legal injury, done him, but if the existing body of law does not afford him a remedy for thus being adversely affected by a legal proceeding in which he is not a necessary party, then the Court can afford him no remedy.

We are accordingly unwilling to accept the Dobb case, *supra,* as being persuasive, for the reasons above stated and for the further reason that a statute was construed to mean that Dobb had an interest in the subject matter.

The decree of the Court of Appeals is reversed and that of the Chancellor is affirmed.