Carmen D. HARRISON and wife, Louise Harrison, Appellants,

v.

Alfred L. SCHRADER, Appellee, and State of Tennessee, Intervenor-Appellee.

Supreme Court of Tennessee.

May 15, 1978.

Lloyd C. McDougal, III, James F. Schaeffer, Schaeffer & McDougal, Memphis, for appellants.

John R. Moss, Moss & Benton & Wallis, Jackson, for appellee.

Brooks McLemore, Jr., Atty. Gen., C. Hayes Cooney, Chief Deputy Atty. Gen., Nashville, for intervenor-appellee.

## OPINION

HENRY, Chief Justice.

This malpractice action raises the question of the constitutionality of Section 23–3415(a), T.C.A., the statute of limitations provision of the Medical Malpractice Review Board and Claims Act of 1975. More specifically, the appellants assert that this section violates the equal protection guaranties of both the United States and Ten-

nessee Constitutions and deprives them of the right to redress of injury secured by our state constitution.

The complaint states that, after performing a vasectomy upon Mr. Harrison in 1972, the appellee, Dr. Schrader, informed him that as a result of the operation he would be sterile. On December 18, 1975, however, Harrison, to his consternation and her dismay, learned that his wife was pregnant. A second physician was consulted, and tests revealed that Harrison was not sterile. On July 29, 1976, he underwent a second vasectomy, during which it was discovered that the first surgery had been negligently performed. This action, brought by Harrison and his wife and based upon common-law negligence and breach of contract, was filed on September 22, 1976.

The appellee moved to dismiss the complaint on the ground that it had been filed more than three years after the alleged negligent act or omission and was, therefore, barred by Section 23–3415, T.C.A. In response, the appellants attacked the constitutionality of the Medical Malpractice Review Board Act, particularly the Act's statute of limitations, and, pursuant to Rule 24.04, T.R.C.P., gave notice to the Attorney General that the statute's validity was being questioned.

Upon intervention by the Attorney General and oral argument on the motion, the trial court entered an order holding "that T.C.A. 23–3415 does not violate the Constitutions of the State of Tennessee or of the United States of America, and that this action is therefore barred by the three-year provision of said statute and should be dismissed."

### I.

Section 23–3415(a) reads as follows:

23–3415. *Statute of limitations—Exceptions.*—(a) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28–304; provided, however, that in the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year *from the date of such discovery;* provided further, however, that *in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred* except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists; and provided still further that the time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered. (Emphasis supplied.)

This enactment was passed as a part of Chapter 299, Public Acts of 1975, designed by the legislature to meet the so-called "medical malpractice crisis" of the late 1960's and early 1970's. On its face, the section recognized the applicability of the general statute of limitations (Sec. 28–304, T.C.A.) and the rule, first stated by this Court in *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974), that in malpractice actions the statute of limitations begins to run from the date the injury is, or should have been, discovered. The legislature, however, proceeded to place an absolute three-year limit upon the time within which malpractice actions, with two exceptions, could be brought. It is this limit, applicable only in medical malpractice actions, that appellants challenge as unconstitutional.[1]

It should be noted at the outset that this is not a conventional statute of limitations. Rather it is an outer limit or ceiling superimposed upon the existing statute (Sec. 28–304, T.C.A.). Suits must be brought within one year from and after the date of the injury or damage, or the date such injury or damage was discovered, subject to the three-year ceiling fixed by Sec. 23–3415(a). See *Watts v. Putnam County,* 525 S.W.2d 488 (Tenn.1975).

### II.

Appellants attack the statute on two grounds. In their first assignment of error, they assert that Section 23–3415 denies them, and other individuals similarly situat-

---

1. We note here, as we did in *Watts v. Putnam County,* 525 S.W.2d 488 (Tenn.1975), that this statute of limitations is one of several passed in recent years in response to the promptings of special interest groups, imposing different periods of limitation on different individuals and classes (e. g., contractors, architects, manufacturers and sellers).

ed, equal protection of the laws, in violation of the Fourteenth Amendment of the United States Constitution and Article XI, Sec. 8 of the Tennessee Constitution.[2]

They argue that the statute applies only to a certain class of individuals, "health care providers," offering them a favored status under the law and creating an arbitrary and unreasonable classification. This, they assert, is contrary to the general statute of limitation applicable to personal injury actions, as set forth in Section 28–304, T.C.A.[3]

An initial problem to be faced in determining whether a statute of limitations applying only in the case of "health care providers" constitutes a denial of equal protection is the question of what standard of review must be utilized in ascertaining the statute's constitutionality.

In their brief, appellants assert that "[t]his favored status enjoyed by physicians, or the other side of the coin, the disfavored status suffered by victims of physicians, must be subjected to *careful* scrutiny." (Emphasis supplied.) If by this statement appellants urge that we adopt a test of strict scrutiny, we must refuse to do so.

██ A classification will be subject to strict scrutiny only when it impermissibly interferes with the exercise of a fundamental right (e. g., voting, interstate travel) or operates to the peculiar disadvantage of a suspect class (e. g., alienage, race). *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Neither of these factors is present here.

All other classifications have generally been subjected to the rational basis test.[4] Under this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

As recently reiterated by the United States Supreme Court in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525 (1976), the classification will be upheld if it "rationally furthers the purpose identified by the State."

This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. (Citation omitted.) Such action by a legislature is presumed to be valid. *Id.*

In determining the validity of a classification under Art. XI, Sec. 8 of our state constitution, a similar test has been applied. As stated by the Court in *City of Chattanooga v. Harris,* 223 Tenn. 51, 56–57, 442 S.W.2d 602, 604 (1969),

[i]t is elemental in our law that the keystone in determining the constitutionality of a statute under this Section of the Constitution is reasonableness of classification.

██ The test to be applied has been set forth in numerous cases. The classification must rest upon a reasonable basis. If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formu-

---

2. Art. XI, Sec. 8, of the Tennessee Constitution states in pertinent part: "The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

3. Sec. 28–304, T.C.A., provides that actions "for injuries to the person . . . shall be commenced within (1) year after the cause of

action accrued." This Court has held that the cause of action accrues and the statute begins to run when the injury occurs or is discovered or when in the exercise of reasonable care should have been discovered. *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975), thereby adopting what is commonly known as the "discovery rule."

4. For a discussion of the standard of review to be applied in equal protection challenges to medical malpractice legislation, see Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications,* 55 Tex.L.Rev. 759, 769–784 (1977); see also *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976).

lated for its determination. *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968); *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177 (1912).

■ The burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld. *Swain v. State,* 527 S.W.2d 119 (Tenn.1975); *Estrin, supra; Phillips v. State,* 202 Tenn. 402, 304 S.W.2d 614 (1957).

■ Before the classification will be held to violate the equal protection guaranty, it must be shown that it has no reasonable or natural relation to the legislative objective. *City of Chattanooga, supra; Phillips, supra.* In addition, the statute must apply alike to all who fall within, or can reasonably be brought within the classification. *Massachusetts Mutual Life Insurance Co. v. Vogue Inc.,* 54 Tenn.App. 624, 393 S.W.2d 164 (1965).

In the case of *Dobbins v. Terrazzo Machine & Supply Co.,* 479 S.W.2d 806 (Tenn. 1972), this Court, in the course of deciding whether the time for instituting suit was governed by Sec. 28–304, T.C.A., or Sec. 50–914, was faced with an argument similar to that advanced here. Rejecting the defendant's contention that the classification employed violated Art. XI, Sec. 8, the Court stated:

> At the time of passage of the statutes in question here there was indubitably a valid reason for the distinction made with respect to maturity of a cause of action as between those persons within the ambit of the Workmen's Compensation law and other persons. 479 S.W.2d at 810.

■ Applying the standard of review used under the federal and state constitutions, we cannot say that there was no reasonable or rational basis for the distinction made between actions for medical malpractice and those for personal injuries

caused by other means or for the separate and distinct treatment accorded "health care providers."

At the time the legislature passed the statute of limitations eventually codified as Sec. 23–3415(a), T.C.A., this state and the nation were in the throes of what was popularly described as a "medical malpractice insurance crisis." Because of alleged increasing numbers of claims, insurance companies had grown reluctant to write medical malpractice policies. Where policies were available, premiums had risen astronomically.[5]

The legislature could have seen in this situation a threat not only to the medical profession and its insurers, but also to the general welfare of the citizens of this state. As liability costs skyrocketed, so would the cost of health care.[6] Physicians would be encouraged to cease practice or contemplate early retirement, and the number of available physicians would decrease. The practice of "defensive medicine," spawned by fear of costly legal actions, would lead to a lower quality of health care in general. These considerations may or may not have been valid; however, it is apparent that they were accepted by the legislature and formed the predicate for its action.

In addition, it could be argued that to the extent that safe estimates required by actuarial uncertainty, aggravated by the extended period during which a physician could be subject to potential liability, contributed to the increase in malpractice insurance costs, "it is understandable that a legislature intent upon halting such phenomenal increases would seek some method to increase the certainty of such estimates," i. e., an absolute three-year limit on the time within which actions could be brought. Note, *Malpractice in Dealing with Medical Malpractice ??,* 6 Mem.St.L.Rev. 437, 459 (1976).

As the Arizona Court of Appeals stated in *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26, 32 (1976), *appeal dismissed* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 (1976),

---

**5.** A special report of a committee established under the Secretary of Health, Education and Welfare, issued in 1973, indicated that between 1960 and 1970 insurance premiums rose on a national average of 540.8% for physicians and 949.2% for surgeons. In Tennessee alone the increase of insurance premiums between 1968 and 1975 was approximately 700%. See Note,

*Malpractice in Dealing with Medical Malpractice ??,* 6 Mem.St.L.Rev. 437 (1976).

**6.** In 1973 the national average of the amount paid by a patient to cover the cost of malpractice insurance was 30 cents per doctor per visit; by 1975 this had risen to $1.24. Medical Briefs, *Malpractice Rates Hurting Patients,* 70 J.Tenn.Med.A. 57 (1977).

when faced with an equal protection challenge of the Arizona statute of limitations in medical malpractice actions:

> We find that the importance to the public of good health care and the problems which arise when malpractice claims are brought against health providers after the passage of many years constitute sufficient reasons for the legislature to place them in a separate classification for this purpose.

This Court cannot say that there is no reasonable basis for the separate classification of health care providers or that this classification bears no reasonable relation to the legislative objective of reducing and stabilizing insurance and health costs and protecting the public as a whole. Indeed, at the time Sec. 23–3415(a) was passed, "there was indubitably a valid reason for the distinction made" by the statute.

### III.

As their second assignment of error, appellants assert that Section 23–3415 "deprives persons such as plaintiff of an opportunity of redress of an injury done his person in violation of Article I, Section XVII of the Constitution of the State of Tennessee."

Article I, Sec. 17 reads in part as follows:

> *Open courts—Redress of injuries—Suits against the State.* That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

This Section of our constitution has been interpreted by this Court as a mandate to the judiciary and not as a limitation upon the legislature. *Scott v. Nashville Bridge Co.*, 143 Tenn. 86, 223 S.W. 844 (1920).

In *Barnes v. Kyle*, 202 Tenn. 529, 535–536, 306 S.W.2d 1, 4 (1957), the Court noted:

> "The constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance." (Quoting from 16A C.J.S. *Constitutional Law* § 709c, p. 1214.)

Statutes providing for the limitation of actions are, apart from equitable principles, "exclusively the creatures of the legislative branch of government." *Carney v. Smith*, 222 Tenn. 472, 477, 437 S.W.2d 246, 248 (1969). They are justified on the basis of policy; and

> [t]he legislative body, in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him [within a suitable time]. *Hargraves v. Brackett Stripping Machine Co.*, 317 F.Supp. 676, 682 (E.D. Tenn.1970) (discussing the constitutional soundness of the decision of this Court in *Jackson v. General Motors Corp.*, 223 Tenn. 12, 441 S.W.2d 482 [1969]).

In *Dunn v. Felt*, 379 A.2d 1140 (Del.Super.1977), the Superior Court of Delaware addressed the plaintiff's contention that Delaware's three-year statute of limitations in medical malpractice actions violated a provision of the Delaware Constitution similar to that in the Tennessee Constitution.[7]

> The plaintiffs, I think, are mistaken in their notion of what [the statute of limitations] does. It does not eliminate a remedy for a civil wrong; it simply provides that after 3 years no cause of action can arise. The General Assembly has the power to create new rights and abolish old ones so long as they are not vested. (Citation omitted.)

> Some of the plaintiffs' arguments indicate a misconception of the nature of the statutes of limitation. Commenting upon them the United States Supreme Court in *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) said:

>> "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles . . . They are by definition arbitrary . . . [representing] a public policy about the privilege to litigate." 379 A.2d at 1141.

As its first sentence indicates, Sec. 23–3415(a) is merely superimposed upon Sec. 28–304. The discovery rule of the latter statute still applies subject only to the three-year ceiling, which is unrelated to the accrual of the cause of action. See *Watts v. Putnam County, supra.*

---

7. Del.Const. Art. I, Sec. 9, which provides in part that "every man for an injury done him in

his . . . person . . . shall have remedy by the due course of law."

As we said in *Watts:*

We do not necessarily agree philosophically with the results we reach. We can only construe the statute as it is, not as we think it ought to be. 525 S.W.2d at 494.

Undeniably some hardship results from the application of this statute, but it is not the role of this Court to pass upon the wisdom or lack thereof of the legislation under review. In the absence of constitutional infirmity such matters are ones of policy solely for the legislature. See *Hargraves v. Brackett Stripping Machine Co., supra.*

We do not retreat from our holding in *Teeters, supra,* or *McCroskey, supra;* but in this particular situation we bow to the will of the legislature.

The determination of the trial court that Section 23–3415 does not violate the Constitutions of the United States and Tennessee is

Affirmed.

FONES, COOPER and HARBISON, JJ., and QUICK, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

HENRY, Chief Justice.

Appellants have filed a petition requesting that the Court rehear this appeal and recede from our former action upon the ground

that the Court has not heretofore rendered an opinion upon the issue of whether or not the Tennessee Medical Malpractice Review Board and Claims Act, T.C.A. 23–3401, et seq., and particularly T.C.A. 23–3415, providing a three year limitation on medical malpractice actions, may be applied retroactively to foreclose appellants' cause of action before it ever accrued.

It is true that our original opinion did not address this issue and did not render an opinion thereon. The matter of retroactive application was not raised in the trial court nor was it raised here.

It was the major thrust of appellants' position in this Court that § 23–3415, T.C.A. was unconstitutional in that it arbitrarily and without a reasonable basis violates the equal protection guarantees of both the state and federal constitutions and deprives litigants of the right to redress an injury in violation of our state constitution. We responded to the issues thus presented for our consideration. Counsel may not be heard, at this late date, to revive this action by the injection of a new and different issue.

Rule 32 of this Court provides, in pertinent part:

A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked.

The petition does not purport to make any new argument nor does it cite any new authority relating to the issues raised in this Court under the assignments. Nor does it point out any material fact overlooked. Rather it merely raises a new and different issue. In civil cases, this Court will not, as a general rule, pass upon any question raised for the first time on appeal. *Shelton v. Martin,* 180 Tenn. 454, 176 S.W.2d 247 (1943); nor will we consider on rehearing that which was not at issue in the original hearing. *Nashville v. Wilson,* 88 Tenn. 407, 12 S.W. 1082 (1848).

Under the rules governing the practice and procedure of this Court, and our consistent decisional law, we have no choice but to deny the petition. We caution, however, that this case does not provide an answer to the question of the retroactive application of the statute. The resolution of this issue must await a controversy wherein it is properly raised.

FONES, COOPER and HARBISON, JJ., and QUICK, Special Justice, concur.