# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 29, 2012 Session

## SANDI  D. JACKSON v. HCA HEALTH SERVICES OF TENNESSEE, INC., D/B/A CENTENNIAL MEDICAL CENTER ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 10C-4697      Joseph P. Binkley, Jr., Judge**

---

**No. M2011-00582-COA-R3-CV - Filed April 18, 2012**

---

This appeal arises from the dismissal of a medical malpractice action due to the plaintiff's failure to provide a certificate of good faith. All defendants filed Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss the medical malpractice action based upon Tennessee Code Annotated § 29-26-122(a), which provides: "If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause." Because the plaintiff failed to make a showing that the omission was due to the failure of any healthcare provider to provide records or demonstrate extraordinary cause, the trial court granted the motions and dismissed the case. The plaintiff asserts on appeal that the statutory requirement violates the separation of powers clause and that it violates the due process and equal protection guarantees of the constitution of Tennessee by treating plaintiffs in suits for medical negligence differently from plaintiffs in other civil litigation and by allegedly restricting access to the courts. Finding no constitutional infirmities, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and ROBERT W. WEDEMEYER, SP. J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Sandi D. Jackson.

C. J. Gideon, Jr., Dixie W. Cooper, and Brian P. Manookian, Nashville, Tennessee, for the appellees, HCA Health Services of Tennessee, Inc., d/b/a Centennial Medical Center and d/b/a/ Hendersonville Medical Center.

Phillip North, J. Eric Miles and Lauren Smith, Nashville, Tennessee, for the appellees,

Joseph Magoun, M.D., Claude L. Ferrell, L.D., Jonathan Grooms, CRNA, Anesthesia Medical Group, P.C., Louis Brusting, III, M.D., and the Heart and Vascular Team, P.L.L.C.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; and Stephanie A. Bergmeyer, Assistant Attorney General, for the intervenor, State of Tennessee.

**OPINION**

In August of 2009, Sandi D. Jackson ("Plaintiff") filed a *pro se* complaint against numerous defendants asserting a medical malpractice claim for injuries allegedly arising out of a "minimally invasive, robot-assisted mitral valve repair and atrial cryoblation" that Plaintiff underwent at Centennial Medical Center in August 2008 and for subsequent care that was due to an infection that occurred after her initial discharge from the hospital. The 42-page complaint contains numerous allegations against each of the individual and organizational defendants, and requests $14 million in compensatory damages and $4 million in punitive damages.

The defendants, HCA Health Services of Tennessee, Inc., d/b/a Centennial Medical Center and d/b/a/ Hendersonville Medical Center; Joseph Magoun, M.D.; Claude L. Ferrell, L.D.; Jonathan Grooms, CRNA; Anesthesia Medical Group, P.C.; Louis Brusting, III, M.D.; and the Heart and Vascular Team, P.L.L.C., (collectively "Defendants") each filed Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss based on Plaintiff's failure to provide a certificate of good faith within 90 days of the filing of her complaint, which was the applicable requirement under the then current version of Tennessee Code Annotated § 29-26-122(a) (2008) and Plaintiff's failure to comply with the notice requirement in Tennessee Code Annotated § 29-26-121. Before the motions were heard, Plaintiff voluntarily dismissed all claims.

Plaintiff re-filed this action on December 1, 2010, with the timely filing of a new complaint and summons, however, a certificate of good faith was not filed with the complaint. Defendants filed motions to dismiss due to Plaintiff's failure to file a certificate of good faith with the filing of the complaint, which was required pursuant to a 2009 amendment to Tennessee Code Annotated § 29-26-122(a). In her response to the motions, Plaintiff conceded that notice had not been timely given and that no certificate of good faith had been filed; nevertheless, she asserted that the motions should be denied on the grounds that the requirement under Tennessee Code Annotated § 29-26-122(a) was unconstitutional because it violates: (1) separation of powers, (2) the open courts provision of the Tennessee

Constitution, article I, section 17, (3) equal protection under the Tennessee and U.S. Constitutions, and (4) substantive and procedural due process guarantees of the Tennessee Constitution, article I, section 8, and the U.S. Constitution.

Because the constitutionality of a state statute was challenged, the State of Tennessee filed a motion to intervene in the action to defend the constitutionality of the statute, and permission to intervene was granted.

Following a hearing on the several motions, the trial court dismissed Plaintiff's medical malpractice claims due to her failure to provide a certificate of good faith as required by Tennessee Code Annotated § 29-26-122(a). The trial court entered separate orders granting each of the defendants' motions to dismiss. The order granting the motion of HCA Health Services d/b/a Centennial Medical Center and d/b/a Hendersonville Medical Center was entered on February 25, 2011. The order granting the motions of Anesthesia Medical Group P.C., Claude L. Ferrell, M.D., and Jonathan Grooms, CRNA, was entered on February 28, 2011. The order granting the motion of Joseph Magoun, M.D., was entered on February 28, 2011. The order granting the motions of Louis A. Brunstin, III, M.D., and the Heart & Vascular Team, PLLC, was entered on March 11, 2011. The trial court entered an order upholding the constitutionality of Tennessee Code Annotated § 29-16-122 on March 11, 2011. This appeal followed.

### ISSUES

Plaintiff contends that Tennessee Code Annotated § 29-26-122 violates the separation of powers clause of the constitution of Tennessee, thereby giving unlawful primacy to the General Assembly over the Tennessee Supreme Court. Plaintiff also contends that the statutory scheme violates the due process and equal protection guarantees of the constitution of Tennessee by treating plaintiffs in suits for medical negligence differently as contrasted with plaintiffs in other types of civil litigation. Defendants insist there are no constitutional infirmities with the statutory scheme and the trial court's decision to dismiss the complaint should be affirmed.

### STANDARD OF REVIEW

The issues presented here constitute a facial challenge to a statute, meaning they involve a claim "that the statute fails a constitutional test and should be found invalid in all applications." *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

A facial challenge to a statute is the most difficult challenge to mount successfully. The presumption of a statute's constitutionality applies with even greater force when a facial challenge is made. Accordingly, the challenger must establish that no set of circumstances exists under which the statute would be valid. Stated another way, the challenger must demonstrate that the law cannot be constitutionally applied to anyone.

Courts considering a facial challenge to a statute should proceed with caution and restraint because holding a statute facially unconstitutional may result in unnecessary interference with legitimate governmental functions. Accordingly, the courts view facial invalidity as "manifestly strong medicine" and invoke it sparingly and only as a last resort.

There are at least three reasons for the courts' reticence to invalidate statutes on their face. First, claims of facial invalidity often rest on speculation and thus run the risk of the "premature interpretation of statutes on the basis of factually barebones records." Second, facial challenges "run contrary to the fundamental principle of judicial restraint" by inviting the courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."

Thus, a successful facial constitutional challenge results in the wholesale invalidation of the statute. While passing on the validity of a statute wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular. For this reason, many courts view "as applied" challenges as the "basic building blocks" of constitutional adjudication. "As applied" challenges are preferred because, if they are successful, they do not render the entire statute completely inoperative. In some circumstances, the courts can best fulfill the legislature's intent by prohibiting only the unconstitutional applications of a statute, while allowing the State to enforce the statute in other circumstances.

*Waters*, 291 S.W.3d at 921-923 (internal citations and footnotes omitted).

**ANALYSIS**

We start our analysis with a recitation of the statutory scheme being challenged, specifically Tennessee Code Annotated § 29-26-122(a), as amended in 2009. The section

provides, in pertinent part:

(a) In any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause. The certificate of good faith shall state that:

(1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

(B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115; or

(2) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

(B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue and, as appropriate, information from the plaintiff or others with knowledge of the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent

with the requirements of § 29-26-115. Refusal of the defendant to release the medical records in a timely fashion or where it is impossible for the plaintiff to obtain the medical records shall waive the requirement that the expert review the medical record prior to expert certification.

. . . .

(c) The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. The failure of a defendant to file a certificate of good faith in compliance with this section alleging the fault of a non-party shall, upon motion, make such allegations subject to being stricken with prejudice unless the plaintiff consents to waive compliance with this section. If the allegations are stricken, no defendant, except for a defendant who complied with this section, can assert, and neither shall the judge nor jury consider, the fault, if any, of those identified by the allegations. The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.

**I.**

We begin our analysis with Plaintiff's contention that Tennessee Code Annotated § 29-26-122(a), the requirement that a certificate of good faith be filed with the filing of the complaint, deprives plaintiffs in medical malpractice actions of their due process rights, the right to redress of injury secured by our state constitution, and that it violates the equal protection guaranties of plaintiffs in medical malpractice actions under the Tennessee constitution.[1]

---

[1]The Tennessee constitution does not contain an express equal protection guarantee, nevertheless "[t]he concept of equal protection espoused by the federal and of our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" *Tenn. Small School Systems v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920) (citing *State ex rel Dept. of Social Services v. Wright*, 736 S.W.2d 84 (Tenn. 1987)). While recognizing that "[t]he equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment are historically and linguistically distinct," our Supreme Court "has followed the framework developed by the United States Supreme Court for analyzing equal protection claims." *Newton v. Cox*, 878 S.W.2d 105, 109 (Tenn. 1994) (quoting *Tenn. Small School Systems*, 851 S.W.2d at 153).

A similar challenge to requirements under the 1975 version of the medical malpractice act was asserted in *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978). In *Harrison*, the plaintiff challenged the constitutionality of Tennessee Code Annotated § 23-3415(a), the statute of repose provision of the Medical Malpractice Review Board and Claims Act of 1975. *Id*. at 823. The plaintiffs in *Harrison* asserted that this section violated the equal protection guaranties of both the United States and Tennessee Constitutions and deprived them of the right to redress of injury secured by our state constitution. *Id*. at 823-24.

In the complaint, the Harrisons asserted that, after performing a vasectomy upon Mr. Harrison in 1972, the appellee, Dr. Schrader, informed him that as a result of the operation he would be sterile; however, on December 18, 1975, they learned, as the court said, "to his consternation and her dismay," that Mrs. Harrison was pregnant. *Id*. at 824. Subsequent tests revealed that Mr. Harrison was not sterile. *Id*. On July 29, 1976, he underwent a second vasectomy, at which time, it was discovered that the first surgery had been negligently performed. *Id*. at 824. On September 22, 1976, Mr. and Mrs. Harrison commenced their medical malpractice action. *Id*.

Dr. Schrader moved to dismiss the complaint on the ground that it had been filed beyond the statute of repose, which was three years after the alleged negligent act or omission. *Id*. (citing Tenn. Code Ann. § 23-3415 (1975)).[2] In response, the plaintiffs challenged the constitutionality of the Medical Malpractice Review Board Act on the grounds stated above. *Id*. Upon intervention by the Attorney General and oral argument on the motion by the parties, the trial court held "that T.C.A. 23-3415 does not violate the Constitutions of the State of Tennessee or of the United States of America, and that this action is therefore barred by the three-year provision of said statute and should be dismissed." *Id*. The Supreme Court affirmed the dismissal. *Id*. at 826.

---

[2]Section 23-3415(a) (1975) read as follows:

The statute of limitations in malpractice actions shall be one (1) year as set forth in s 28-304; provided, however, that in the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery; provided further, however, that in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists; and provided still further that the time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

In its analysis, the Supreme Court first determined "what standard of review must be utilized in ascertaining the statutes constitutionality." *Id*. at 825. The Harrisons had asserted that the statutory scheme afforded physicians a "favored status," the victims of physicians malpractice suffered a "disfavored status," and thus, the statute "must be subjected to [strict] scrutiny." The Supreme Court expressly rejected this argument and stated that "[a] classification will be subject to strict scrutiny only when it impermissibly interferes with the exercise of a fundamental right (e. g., voting, interstate travel) or operates to the peculiar disadvantage of a suspect class (e. g., alienage, race).[3] *Id*. at 825 (citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973)). Following an analysis, the court concluded that the test to be applied to determine the validity of the classification at issue was the reasonable basis test. *Id.* "If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formulated for its determination. *Id.* at 825-26.

Applying the reasonable basis test, the Supreme Court reasoned it could not say "there was no reasonable or rational basis for the distinction made between actions for medical malpractice and those for personal injuries caused by other means or for the separate and distinct treatment accorded 'health care providers.'"[4] *Id*. at 826. The court commented:

> At the time the legislature passed the statute of limitations eventually codified as Sec. 23-3415(a), T.C.A., this state and the nation were in the throes of what was popularly described as a "medical malpractice insurance crisis." Because of alleged increasing numbers of claims, insurance companies had grown

---

[3]In the 1986 opinion of *Newton v. Cox* the Tennessee Supreme Court held that "medical malpractice litigants are not members of a suspect class." *Newton*, 878 S.W.2d at 109 (citing *Sutphin v. Platt*, 720 S.W.2d 455 (Tenn. 1986)).

[4]The *Harrison* court had already commented that:

This enactment was passed as a part of Chapter 299, Public Acts of 1975, designed by the legislature to meet the so-called "medical malpractice crisis" of the late 1960's and early 1970's. On its face, the section recognized the applicability of the general statute of limitations (Sec. 28- 304, T.C.A.) and the rule, first stated by this Court in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974), that in malpractice actions the statute of limitations begins to run from the date the injury is, or should have been, discovered. The legislature, however, proceeded to place an absolute three-year limit upon the time within which malpractice actions, with two exceptions, could be brought. It is this limit, applicable only in medical malpractice actions, that appellants challenge as unconstitutional. [footnote omitted]

*Id.* at 824.

reluctant to write medical malpractice policies. Where policies were available, premiums had risen astronomically.

The legislature could have seen in this situation a threat not only to the medical profession and its insurers, but also to the general welfare of the citizens of this state. As liability costs skyrocketed, so would the cost of health care. [footnote omitted]. Physicians would be encouraged to cease practice or contemplate early retirement, and the number of available physicians would decrease. The practice of "defensive medicine," spawned by fear of costly legal actions, would lead to a lower quality of health care in general. These considerations may or may not have been valid; however, it is apparent that they were accepted by the legislature and formed the predicate for its action.

In addition, it could be argued that to the extent that safe estimates required by actuarial uncertainty, aggravated by the extended period during which a physician could be subject to potential liability, contributed to the increase in malpractice insurance costs, "it is understandable that a legislature intent upon halting such phenomenal increases would seek some method to increase the certainty of such estimates," i. e., an absolute three-year limit on the time within which actions could be brought. Note, Malpractice in Dealing with Medical Malpractice ??, 6 Mem.St.L.Rev. 437, 459 (1976).

*Id.* at 826 (footnote omitted).

After considering the foregoing principles and facts, the *Harrison* court found "that the importance to the public of good health care and the problems which arise when malpractice claims are brought against health providers after the passage of many years constitute sufficient reasons for the legislature to place them in a separate classification for this purpose." *Id.* at 827. Based upon this finding, the court reached the following conclusion:

This Court cannot say that there is no reasonable basis for the separate classification of health care providers or that this classification bears no reasonable relation to the legislative objective of reducing and stabilizing insurance and health costs and protecting the public as a whole. Indeed, at the time Sec. 23-3415(a) was passed, "there was indubitably a valid reason for the distinction made" by the statute.

*Id.*

The burden of showing that a classification is unreasonable and arbitrary is on the person challenging the statute and "if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld." *Id.* at 826. "Before the classification will be held to violate the equal protection guaranty, it must be shown that it has no reasonable or natural relation to the legislative objective." *Id*. In addition, the statute must apply alike to all who fall within, or can reasonably be brought within the classification. *Id*. (citing *Massachusetts Mutual Life Ins. Co. v. Vogue Inc*., 624, 393 S.W.2d 164 (Tenn. Ct. App. 1965)).

Applying the reasonable basis standard of review, we cannot say that the current medical malpractice act, specifically, Tennessee Code Annotated § 29-26-122(a), has no reasonable basis for the distinction in filing good faith certificates in medical malpractice actions and not in civil actions for personal injuries caused by other means, which are not under the purview of medical malpractice, or that it has no natural relation to the legislative objective. *See id*; *see also City of Chattanooga v. Harris*, 442 S.W.2d 602, 604 (Tenn. 1969); *Phillips v. State*, 304 S.W.2d 614 (Tenn. 1957).

As was the environment at the time of *Harrison*, the legislature perceived a threat in 2009, not only to the medical profession and its insurers, but to the general welfare of the citizens of this state because, believing that as liability costs increase, so does the cost of health care and the practice of "defensive medicine," spawned by the fear of costly legal actions, may lead to a lower quality of health care in general. Whether these considerations are or are not valid is not for this court to determine. *Id.* at 828. What is relevant and controlling is that they were accepted by the legislature and formed the predicate for its action.

Accordingly, we cannot say that there is no reasonable basis for the separate classification of health care providers or that this classification bears no reasonable relation to the legislative objective of reducing and stabilizing health costs and protecting the general public. Borrowing a phrase from *Harrison*, at the time Section 122(a) was enacted, "there was indubitably a valid reason for the distinction made" by the statute. *Id*. at 827.

**II.**

We shall now address Plaintiff's contention that Tennessee Code Annotated § 29-26-122 (2009) violates the separation of powers clause of the Tennessee constitution because, Plaintiff contends, it is in conflict with Tennessee Rule of Civil Procedure 3.

Rule 3 provides in pertinent part: "All civil actions are commenced by filing a complaint with the clerk of the court." Tennessee Code Annotated § 29-26-122(a) provides that in any medical malpractice action in which expert testimony is required "the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint."

Plaintiff contends that Tennessee Code Annotated § 29-26-122 (2009) is in conflict with Rule 3 because, as she states in her brief, it "requires plaintiffs to, in practical effect, conduct discovery and make a *prima facie* case prior to suit being filed." Plaintiff further contends that the statute is "a rule of procedure because it dictates both the form and content of complaints in medical negligence cases." We respectfully disagree.

Contrary to Plaintiff's assertion, we do not construe Section 122 as being in conflict with Tennessee Rule of Civil Procedure 3. The statute does not nullify the commencement of a civil action with the filing of a complaint. Although Section 122(c) provides that the recently commenced action "shall, upon motion, make the action subject to dismissal with prejudice" *if* the plaintiff fails to file a certificate of good faith in compliance with this section, the statute also recognizes that good cause may exist for the plaintiff's failure to complete his or her due diligence prior to commencement of the action. This is apparent from the exceptions provided in Section 122(a) and (c), both of which expressly provide that the recently commenced action shall not be dismissed *if* the failure to file the certificate of good faith "was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or [the plaintiff] demonstrated extraordinary cause." Tenn. Code Ann. § 29-26-122(a), (c) (2009).

More importantly, requiring a plaintiff to conduct a due diligence inquiry prior to filing a complaint is not in conflict with the Tennessee Rules of Civil Procedure adopted by the Supreme Court of Tennessee. In fact, requiring a plaintiff to exercise due diligence prior to the filing of the complaint is entirely consistent with the rules. Rule 11.02 expressly provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

-11-

(2) *the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law*;

(3) *the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery*; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Tenn. R. Civ. P. 11.02 (emphasis added).

Although Tennessee Code Annotated §29-26-122(a)(1) requires the filing of a certificate of good faith with the complaint, it does not require that a plaintiff have, at the commencement of the action, all of the expert testimony that may be needed on all issues. It merely requires proof of the plaintiff's due diligence, specifically that the plaintiff or his counsel consulted with at least one competent medical expert who provided a written statement confirming that the expert believes, based on the information available from medical records concerning the care and treatment of the plaintiff, that there is a good faith basis to maintain the action consistent with the requirements of Tennessee Code Annotated § 29-26-115. Alternatively, the plaintiff or his counsel may certify that he has consulted with a competent expert who has provided a written statement confirming, upon information and belief:

[T]hat there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of § 29-26-115.

Tenn. Code Ann. § 29-26-122(a)(2). The statute further provides that: "Refusal of the defendant to release the medical records in a timely fashion or where it is impossible for the plaintiff to obtain the medical records shall waive the requirement that the expert review the medical record prior to expert certification." *Id*.

-12-

For the reasons stated above, we have concluded the requirement in Tennessee Code Annotated §29-26-122(a) that a plaintiff conduct a due diligence inquiry prior to filing a complaint for medical negligence is not in conflict with Tennessee Rule of Civil Procedure 3. Furthermore, we have determined that Plaintiff has failed to establish that the requirement of filing a certificate of good faith with the complaint pursuant to Tennessee Code Annotated § 29-26-122 (2009) violates the separation of powers clause of the Tennessee constitution.[5]

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the plaintiff, Sandi Jackson.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[5]At the hearing, the trial court dismissed the Complaint on two grounds, one of which was Plaintiff's failure to give each of the defendants the sixty-day pre-suit notification required by Tennessee Code Annotated § 29-26-121; the trial court's order did not mention this ground. As Defendants correctly asserted on appeal, Plaintiff did not challenge the dismissal of her complaint based upon her failure to provide the pre-suit notice required by Tennessee Code Annotated § 29-26-121. The other issue raised and addressed on this appeal is likely to be repeated, and thus this court felt it appropriate to address. However, we agree with Defendants that Plaintiff waived any challenge she may have had to Tennessee Code Annotated § 29-26-121, and thus, we would affirm the trial court on this ground as well.