IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2012 Session

IN RE ESTATE OF MAVIS A. COMBS

Appeal from the Probate Court for Davidson County
No. 10P652     David Randall Kennedy, Judge

No. M2011-01696-COA-R3-CV - Filed August 28, 2012

Decedent's adult daughter and three adult grandchildren appeal from the trial court's judgment that the grandchildren are not entitled to survivor pension benefits under decedent's employee pension plan. Summary judgment was appropriate because there are no genuine issues of material fact and because there exists no legal basis on which to extend survivor pension benefits to the grandchildren. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Jessie Ray Akers, Jr. and David Matthew Dolan, Nashville, Tennessee, for the appellants, Vicki Spurlock, William Stephen Earl Patterson, Mavis Jennie Lynette Lew, and Mary Michelle Shawhan.

Cynthia Ellen Gross, Jason Paul Bobo, and Kathryn S. Evans, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

The decedent, Mavis A. Combs ("Ms. Combs"), worked for the Metropolitan Government of Nashville and Davidson County ("Metro") for many years. She died intestate on February 7, 2010. At the time of her death, Ms. Combs was unmarried and was survived by her daughter, Vicki Spurlock ("Ms. Spurlock"), and three adult grandchildren, William Stephen Earl Patterson, Mavis Jennie Lynette Lew, and Mary Michelle Shawhan ("Ms. Shawhan").

Ms. Shawhan had Ms. Combs's power of attorney and, beginning in November 2009, attempted to apply through the Metro Human Resources Department ("HR") for pension benefits on Ms. Combs's behalf. On February 7, 2010, Ms. Combs died before completing the pension application process, thus her pension benefits never commenced.

In April 2010, Ms. Spurlock, the administratrix of Ms. Combs's estate, filed a petition for declaratory relief requesting a declaration that Ms. Combs's three grandchildren, rather than the estate, are the legal beneficiaries of the pension plan. Metro filed a motion for summary judgment arguing that there was no legal authority pursuant to the Metropolitan Code of Laws for the payment of survivor pension benefits to the grandchildren or to the estate. The trial court, finding no genuine issues of material fact and finding that Metro had satisfied its burden as the moving party, granted the motion for summary judgment on the ground that there is no ordinance or other legal authority extending survivor pension benefits to the grandchildren. Ms. Spurlock and the grandchildren appeal.

*Metro Pension System and Application Process: Undisputed Facts*[1]

Metro and its Employee Benefit Board regulate pensions in accordance with the Metropolitan Charter and the Metropolitan Code of Laws. A Metro employee who has at least five years of credited service earns a vested pension benefit. Before 1987, Metro employees contributed money to the pension fund, but since then Metro alone has funded the pension benefits for general government employees. Metro offers seven pension options.

To initiate the pension application process, a Metro employee first contacts the HR benefits staff. Then, the employee has an intake meeting with a benefits staff member who provides the employee with necessary paperwork and a list of documents the employee must provide to HR so that his or her pension application will be processed. These required documents include a birth certificate, Social Security card, and Medicare card. The employee must present additional documentation if he or she desires to leave a pension benefit to a survivor beneficiary, including the potential beneficiary's birth certificate and Social Security card. Metro requires these documents because it calculates an employee's various pension options based on actuarial tables and data. For example, an employee's monthly pension benefit would be lower if he or she had designated a young survivor beneficiary versus an older one.

---

[1] In its order granting summary judgment, the trial court "adopt[ed] the undisputed facts in the record as the facts in this case." The undisputed facts recited herein regarding Metro's pension system and application process are from the trial court's order which is fully supported by the testimony of Shannon Hall, the HR liason to the Metro Employee Benefit Board.

Once a benefits staff intake employee compiles the required documents and forms, another HR employee known as the pension calculator calculates the employee's various pension options. If an employee has provided the necessary documents and wants to see pension options that include a designated survivor beneficiary, the pension calculator will calculate all of the pension options listed on the application for benefits, with certain exceptions where additional information may be needed. If the employee does not intend to designate a survivor beneficiary, then the pension calculator will calculate only two of the pension options. Once the pension calculator has calculated the various options, he or she meets with the employee and the employee elects one of the pension options.

Separate from the application for benefits is the "Beneficiary Designation Form - Last Pension Check and Contributions." An employee lists beneficiaries on this form for two purposes: (1) If an employee's pension has commenced, no matter the pension option selected, those listed on the beneficiary designation form will receive the final pension check in the month in which the employee dies because the employee cannot collect that final check; and, (2) If an employee's pension has not commenced, the beneficiaries listed will receive the employee's pension contributions, if applicable.

Designating one or more beneficiaries on the beneficiary designation form is not the same as designating a survivor beneficiary for a pension. If an employee desires to designate a survivor beneficiary to receive his or her pension, he or she must list this beneficiary on the application for benefits after the pension options are calculated and after he or she selects one that includes a survivor benefit. Only one person may receive an employee's survivor pension benefit.

If an employee has a vested pension benefit and dies before electing a pension option, and the employee has a legal spouse or dependent children, then a survivor pension benefit is provided for the spouse and/or any dependent children. However, if an employee who does not have a legal spouse or dependent children has a vested pension benefit and dies before electing a pension option, then the employee's beneficiaries are entitled only to the employee's pre-1987 pension contributions.

*Ms. Combs's Pension Application: Undisputed Facts*

Ms. Shawhan lived with Ms. Combs for two and a half years preceding her death. To begin the application process for Ms. Combs's pension benefit, Ms. Shawhan met with HR employee Pamela McInish on November 20, 2009. Ms. McInish instructed Ms. Shawhan that she would need to submit certain documents so that Ms. Combs's pension application

would be processed.[2]  During the meeting, Ms. Shawhan filled out and signed on Ms. Combs's behalf a form entitled Metro Human Resources Service Pension Application Request, but left empty the blank in which an optional beneficiary could be designated. However, Ms. McInish prepared an estimate (dated November 20, 2009) of Ms. Combs's benefits.  The estimates of the joint and survivor options were calculated "based on a beneficiary date of birth of 3/11/1981," Ms. Shawhan's birth date.  Ms. McInish also gave Ms. Shawhan the beneficiary designation form.  This form bears Ms. Combs's signature, is dated 12/15/09, designates as beneficiaries Ms. Shawhan and Ms. Combs's two other adult grandchildren, and specifically states:

> The pension check beneficiary is the person you name to receive the last pension check owed to you for the month in which you die. If you have contributed to the pension plan and you die before your total monthly pension benefit payments equal the amount you contributed and there is no monthly survivor pension benefit owed at your death, then pension contributions may be payable to the person you name.

Ms. Shawhan, as power of attorney for Ms. Combs, did not receive a copy of the application for benefits during the November 20, 2009 meeting because the pension calculator had not yet calculated Ms. Combs's various pension options.

HR had in its possession Ms. Combs's Social Security number because it was listed on Ms. Combs's I-9 Employment Eligibility Verification form, twice on the beneficiary designation form, twice on the service pension application request, and throughout Ms. Combs's employee file and personnel records.  Nevertheless, HR insisted that Ms. Combs's actual Social Security card be produced before processing her pension request.

---

[2] Ms. Shawhan's deposition testimony reads as follows:

Q. Okay. What was–well, during that first meeting [with Ms. McInish], were you told that you would have to provide certain documents to HR?
A. Yes.
Q. What documents were you told that you would have to provide in order for the pension application to be processed?
A. It was a whole list. I can't be sure exactly all of the documents. I know that [Ms. Combs's] birth certificate and Social Security card were at least two of them, but I can't be sure what the rest of them were.
Q. Okay. Did you leave with an actual written-down list of what you would need to–
A. Yes.
Q. –bring back?
A. Yes. [Ms. McInish] had given me a list along with all the other paperwork.

Ms. McInish sent a letter dated December 16, 2009 reminding Ms. Combs and Ms. Shawhan that they still needed to provide HR with a copy of Ms. Combs's Medicare and Social Security cards, and noting that "we cannot proceed any further with [the] pension request" unless that was done. Ms. Combs's Social Security card could not be found, so Ms. Shawhan made numerous attempts to contact Ms. McInish by telephone to ask if she could instead submit a printout from the Social Security Administration. Ms. McInish did not return these telephone calls, but sent to Ms. Combs another letter dated January 8, 2010 stating: "though I have received all the necessary information from your department, and have received Board approval to process your Service Retirement, we cannot proceed any further with your pension request until you provide [the Social Security card] . . . . These documents are required for the successful processing of your current request for pension benefits."[3] On Friday, February 5, 2010, Ms. Shawhan obtained a printout from the Social

_____

[3] Metro does not dispute the disheartening fact that Ms. McInish failed to return Ms. Shawhan's telephone calls. Ms. Shawhan explained:

> Q. Okay. So at that point, December 16, 2009, is it correct that [Ms. Combs's Social Security and Medicare cards] had not been provided?
> A. Correct.
> Q. Okay.
> A. That's when I started calling to ask if I could get something from the Social Security office, because I was unable to locate her Social Security card at that time.
> Q. Okay. Tell me about that. Who did you call and who did you talk to?
> A. I called the board and Pam McInish, and I wasn't ever actually able to have someone give me an answer on if a printout from the Social Security office was acceptable or not.
> Q. Did you actually speak to a person when you called?
> A. There was a couple times somebody would answer the phone. I didn't get their names, and even if I did, I have no clue what they are now, but they told me that I would have to speak directly to Pam, that Pam would have to be able to answer that question.
> Q. Okay. Did you specifically ask the person that you talked to the question or–
> A. Yes.
> Q.–Did you just ask to talk to Pam?
> A. I asked them if I–if they knew if the printout from the Social Security office would be acceptable or not, and they said that Pam would have to be able to answer that because she was the one that worked the case.
> Q. Okay. How many times did you call for Pam to ask specifically about the Social Security card?
> A. I don't have an exact number. I know I called several times on the office number. I also had her personal cell number, and so I called and also tried to text her, and I never heard anything back.

We have all experienced the frustration of "red tape." Though we sympathize with Ms. Shawhan, the fact that Ms. McInish did not return her telephone calls cannot influence our decision because neither this fact nor any causes of action arising from it were properly and timely alleged. *See infra* section I.

Security Administration as proof of Ms. Combs's Social Security number and faxed it to HR. Ms. Combs died two days later.

Ms. Combs died before completing the pension application process. The next steps would have been the pension calculator's computation of Ms. Combs's various pension options based on the information contained in the initial documents, Ms. Combs's or her power of attorney's election of a specific pension option so that the pension would commence, and the designation of a survivor beneficiary of the pension. Pursuant to the Metropolitan Code of Laws, the pension benefit belonging to an unmarried employee with no dependent children who dies before his or her pension has commenced does not default to a beneficiary. *See* Metro Code §§ 3.40.041 and 3.40.045. Ms. Combs was unmarried and was survived by one adult daughter and three adult grandchildren so, after her death, the grandchildren received from Metro a check in the amount of her pre-1987 pension contributions, pursuant to the beneficiary designation form.

STANDARD OF REVIEW

A party against whom a declaratory judgment is sought may move for summary judgment at any time. Tenn. R. Civ. P. 56.02. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App.1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).[4]

---

[4] Tennessee Code Annotated section 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.,* 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

ANALYSIS

Metro and its Employee Benefit Board regulate employee pensions in accordance with the Metropolitan Charter and the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Code"). Metro Code section 3.33.010 provides that a Metro employee "who has credited employee service, shall be eligible following termination to receive an employee service pension in accordance with the provisions of this chapter . . . . " However, "[b]efore any benefit payable from the trust fund can be paid, all conditions applicable to the payment of the benefit shall be met . . . ." Metro Code § 3.08.160. The appellants do not challenge the fact that Ms. Combs's pension did not commence before her death because she did not complete the application process and did not elect a pension option and concede that "the [Metro] Code provides no automatic default provision for the employee's post-1987 pension benefits of unmarried persons with no dependent children who die before their pension applications can be processed." Instead, they challenge the constitutionality of the relevant Metro Code provisions and argue that Metro "is estopped in equity from denying payment of the pension due to its negligence, obstruction of the process, and lack of good faith and fair dealing with its employee, Ms. Combs."

## I. *Equitable Claims*

In response to Metro's motion for summary judgment, the appellants alleged, for the first time, alternative claims for relief–namely, that Metro has been unjustly enriched and that Metro should be estopped in equity from not paying the potential pension benefits, based on its negligence and lack of good faith and fair dealing with Ms. Combs.[5] The appellants neither alleged any facts to support these claims nor raised these claims in their petition for declaratory relief nor moved to amend their petition pursuant to Tenn. R. Civ. P. 15.01. The purpose of the pleading requirements in the Tennessee Rules of Civil Procedure is to "provide the parties and the trial court with notice of the claims and defenses involved in the case." *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) (citing *Poster v. Andrews*, 189 S.W.2d 580, 582 (Tenn. 1943)). Furthermore, "a plaintiff may not raise a new theory of recovery for the first time in response to . . . [a] motion for summary judgment." *Blackburn & McCune, PLLC v. Pre-Paid Legal Serv., Inc.*,

---

[5] Though the appellants's brief also raises the issue of whether Metro "should be estopped from claiming [Ms. Combs] did not properly fill out her retirement paperwork, due to the unclean hands doctrine," they offer no argument on this issue. Tennessee Rule of Appellate Procedure 27(a)(7) requires "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . ." Because the appellants's argument fails to meet this basic requirement with respect to the unclean hands issue, we will not consider it.

No. M2009-01584-COA-R3-CV, 2010 WL 2670816, at *28 (Tenn. Ct. App. Jun. 30, 2010). "Rather, the proper procedure [is] to seek to amend the complaint to assert [an] alternative form of relief." *Id*. Thus, we decline to consider the appellants's claims of negligence, lack of good faith and fair dealing, unclean hands, and unjust enrichment because they were untimely and improperly raised.

## II. *Constitutionality of Metro Code Provisions*

The appellants argue that the Metro Code provisions that deny survivor pension benefits to unmarried persons with no dependent children are unconstitutional, that they violate the 14th Amendment of the United States Constitution and Article XI Section 8 of the Tennessee Constitution, and that the state has no rational basis or legitimate state interest for such regulations."[6]

Article XI, § 8 of the Tennessee Constitution provides in pertinent part:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie [immunities], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

This provision of our state Constitution provides for equal protection of laws and affords "essentially the same protection" as the United States Constitution's equal protection clause. *State v. Tester*, 879 S.W.2d 823, 827 (Tenn. 1994) (quoting *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993)). Unless a legislative classification disadvantages a "suspect class" or interferes with the exercise of a "fundamental right," requiring strict scrutiny analysis, it is examined under the "rational basis test." *Tester* at 828.

The appellants concede that the Metro Code provisions[7] that limit the number of individuals who are eligible to receive survivor pension benefits should be examined under the rational basis test, which has been described as follows:

---

[6] The appellants cite no authority in support of this argument and incorrectly cite to Article XI, § 6 of the Tennessee Constitution.

[7] Metro Code §§ 3.40.041, 3.40.045, and 3.08.010 (defining "Dependent Child").

The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

*Tenn. Small Sch. Sys.*, 851 S.W.2d at 153 (quoting *Doe v. Norris*, 751 S.W.2d 834, 841 (Tenn. 1988)) (citations omitted). "Under this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Tenn. Small Sch. Sys.* at 153 (quoting *Harrison v. Schrader*, 569 S.W.2d 822, 825 (Tenn. 1978)).

We find that Metro has a rational basis for limiting survivor pension benefits to surviving spouses and dependent children because these are the classes of individuals who most depend on the employee's income. Generally, adult children and adult grandchildren, like the appellants, earn their own living and do not depend on a parent's or grandparent's income. Also, the limiting of survivor pension benefits has a reasonable relationship to Metro's legitimate interest in controlling the financial burden placed on the pension system that it fully funds for the benefit of all eligible Metro employees. Other courts have found that a government's decision to limit beneficiaries to prevent undue burden on a pension system meets the rational basis test. *See e.g.*, *Bd. of Trustees of Policemen's and Firemen's Ret. Fund v. Cardwell*, 400 So.2d 402, 406 (Ala. 1981) (finding that the Alabama legislature had a rational basis to limit the number of individuals who receive pension benefits as well as the period of coverage provided by the pension system); *Freeman v. N.Y.C. Dep't of Corr.*, 420 N.Y.S.2d 536, 101 N.Y. Sup. Ct. (1979). We, therefore, find that the Metro Code provisions regarding survivor pension benefits pass the rational basis test and are constitutionally sound.

CONCLUSION

The trial court did not err in holding that the appellants are not entitled to a pension benefit that never began. Because no genuine issues of material fact remain and because Metro has shown that the appellants cannot prove the existence of any legal authority to support their claims, we affirm the trial court's decision. We sympathize with the appellants's situation, but we cannot create a pension benefit where none exists in the law.

Costs of appeal are assessed against the appellants, Vicki Spurlock, William Stephen Earl Patterson, Mavis Jennie Lynette Lew, and Mary Michelle Shawhan, and execution may issue if necessary.

_____

ANDY D. BENNETT, JUDGE